The Board of Commissioners of Vermillion County *v.* Hammond.

---

| 83 | 453 |
| 142 | 445 |
| 143 | 303 |

No. 9234.

THE BOARD OF COMMISSIONERS OF VERMILLION COUNTY *v.* HAMMOND.

SOLDIERS' BOUNTY.—*Offer of, by County Commissioners.*—*Pleading.*—*Condition Precedent.*—Suit to recover a bounty offered by a county board for volunteers. The order of the board making the offer was to citizens of the

The Board of Commissioners of Vermillion County v. Hammond.

county who should, by a certain day, enter the military service of the United States, to fill the quota of the county—provided that no bounty should be paid to such as became commissioned officers.

*Held*, that an averment in the complaint, that the "plaintiff had in all things complied with the terms of said offered bounty," was, under the statute (R. S. 1881, section 370), a sufficient allegation that the plaintiff did not become a commissioned officer.

SAME.—*Militia.*—*Enlistment.*—*Muster-In.*—An offer of bounty to persons who will enter the military service to the credit of a county is intended to avoid conscription, and, in view of the army regulations of January 12th, 1864, upon the subject, mere enlistment was not sufficient to secure the bounty, but a muster-in must also appear.

SAME.—*Evidence.*—An offer of bounty by a county board was made for 104 men, to be paid upon presentation of a certificate from the captain, colonel and surgeon that the applicant had been received and mustered in.

*Held*, that such certificates are not legitimate evidence against one suing for the bounty to prove the muster-in of other men, with a view to establish a defence that 104 had been received before the muster-in of the plaintiff.

EVIDENCE.—*Harmless Error.*—When improper evidence is admitted which tends only to establish a fact which is conclusively proven by other legitimate evidence, the error is harmless.

From the Vermillion Circuit Court.

*M. G. Rhoads, R. A. Parrett* and *B. E. Rhoads,* for appellant.

*J. Jump, W. C. Ward, R. O. Hawkins, P. Norton, A. L. Roache* and *E. H. Lamme,* for appellee.

BICKNELL, C. C.—The President of the United States, on the 17th of October, 1863, had called for 300,000 soldiers; and the county board of Vermillion county, in order to fill its quota by volunteers and avoid a draft, made an order on the 23d of November, 1863, offering $100 bounty to every able-bodied male citizen of said county, who should enter into the service of the United States as a soldier, to fill the quota, being 104 men, of volunteers apportioned to said county under said call, the bounty to be paid by an order of the county auditor, on presentation to him of a certificate that the applicant had been received into the service of the United States, signed by the applicant's captain and by the colonel and principal surgeon of his regiment: "*Provided,*

however, that no private shall be entitled to the above bounty who shall, at the time the company is organized, accept of a commission to any office in said company or in any regiment in the service of the United States."

The amended complaint of the appellee stated the making of the foregoing order, and that the appellee, in accordance therewith, had volunteered and was mustered into the military service of the United States as a private in company C of the Eighteenth Regiment Indiana Volunteers, and had been duly credited to said county upon said call, on the date of his muster, to wit, on January 1st, 1864; "that he had in all things complied with the terms of the said offered bounty," and was a citizen of the said county when he thus enlisted; that he had demanded said bounty from the county auditor, which demand had been refused. Wherefore, etc.

A demurrer to this complaint was overruled and this is the first error assigned by the appellant.

The objection made to the complaint is, that acceptance of a commission was a matter subsequent, which would have defeated the right to the bounty, and that the complaint is bad for want of an averment that no such commission was accepted.

In general, a condition subsequent, which defeats a *prima facie* right of action, is matter of defence, but where the subsequent matter is really a condition precedent and its affirmation or denial is essential to the *prima facie* right asserted, it ought to be affirmed or denied in the first instance. *Hyer* v. *Norton*, 26 Ind. 269; Steph. Pl. 352. Under section 84 of our code, however, such matter need not be specifically averred; the pleader may allege that all the conditions on his part have been performed, and this is equivalent to an averment of the performance of each condition. *Home Ins. Co.* v. *Duke*, 43 Ind. 418.

In the case at bar, it was essential to the right of action, that the plaintiff should not have accepted a commission, but as the complaint states compliance in all things with the terms of said offered bounty, that is equivalent, under sec-

tion 84, *supra,* to a specific averment that no such commission was accepted. There was no error in overruling the demurrer to the complaint. *Board, etc.,* v. *Wood,* 39 Ind. 345; *Harson* v. *Pike,* 16 Ind. 140; *Dawkins* v. *Sappington,* 26 Ind. 199.

The defendant answered in six paragraphs:

1. The general denial.

2. That the President, on October 17th, 1863, had called for 300,000 soldiers, and declared that all volunteers under said call should be credited on the next draft, and that if any State should fail to raise her quota, there should be a draft for such deficiency, commencing on January 5th, 1864; that the quota of said county of Vermillion, under said call, was 104 men; that the said bounty was offered to avoid said draft; for which purpose it was necessary that enlisting soldiers should, before January 5th, 1864, have had themselves credited as volunteers upon the quota of said county, and should have notified the proper State officers thereof, so as to prevent, to that extent, a deficiency in said quota; that although the plaintiff, at a place remote from said county, had re-enlisted as a veteran, yet the defendant and the State authorities were not notified thereof until long after January 5th, 1864, so that the county, in order to prevent the draft, had to accept other citizens who enlisted, and credit them on said quota, to the number of 104 men; and that said county paid $100 to each of said 104 men and so prevented a draft before January 5th, 1864, and plaintiff's enlistment was not credited to said county until after said January 5th, 1864, and when it was so credited it was upon the quota of said county under a subsequent call for 200,000 men, issued February 19th, 1864.

3. That before the plaintiff enlisted and was credited, other 104 citizens had enlisted and were credited on the quota of said county under said call for 300,000 men.

4. That before plaintiff enlisted more than 104 men, citizens, etc., had enlisted, some of them before the call for 300,000 men, some afterwards and before November 21st, 1863, and others after November 21st, 1863, but before the

plaintiff had enlisted, all of whom, by consent of the defendant and of the United States, were duly credited upon said call and upon said quota of 104 men.

5. That the county had no power or authority by law to offer said bounty, and that the Legislature had no power to legalize it; that the act of March 3d, 1865, for that purpose, was unconstitutional.

6. That, before the plaintiff enlisted, 135 citizens of said county had enlisted, twelve of them before October 17th, 1863, the date of said call for 300,000 men, others after that date and before November 23d, 1863, and others after November 23d, 1863, but all of them before the plaintiff enlisted, and that all of them, by the proper authorities of the United States and of the State of Indiana, and by consent of the defendant, were credited upon the said quota of said county under said call for 300,000 men.

Demurrers were sustained to the fourth, fifth and sixth of these paragraphs of answer, and these rulings are assigned as errors. All of these paragraphs were insufficient, and the demurrers to them were properly sustained. *Sithin* v. *Board of Commissioners of Shelby County*, 66 Ind. 109, and the cases there cited; *Board of Commissioners, etc.,* v. *Woods,* 69 Ind. 356. The plaintiff replied in denial of the second and third paragraphs of the answer. The issues were tried by the court, who found for the plaintiff in the sum of $100. A motion for a new trial was overruled, and the defendant appealed.

The only error assigned, besides those already considered, is the overruling of this motion. The reasons assigned for a new trial were as follows:

1. Admitting in evidence a writing, purporting to be a certified copy of parts of the records of the office of the adjutant general of the State of Indiana, George W. Russ, whose certificate to said writing bears date April 26th, 1880.

2. Refusing to admit in evidence the 104 certificates of enlistment and muster of 104 men into the military service of the United States, by which certificates the defendant offered

to prove that 104 men enlisted into said military service under the call of the President of the United States of October 17th, 1863, and before the plaintiff enlisted, and were duly mustered into the said military service, each of said certificates so offered in evidence being signed by the captain of the company, the commandant of the camp and the surgeon of the regiment in which the soldier was enlisted and mustered.

3 and 4. The finding of the court is not sustained by the evidence and is contrary to law.

The certificate of the adjutant general, referred to in the first reason for a new trial, is as follows:

" State of Indiana, Marion county, ss.: I, George W. Russ, adjutant general of the State of Indiana, hereby certify that I am the legal custodian of the military records of the said State of Indiana, and that the within and foregoing (104 men) one hundred and four men were duly enlisted and mustered into the military service of the United States, at the times within specified, and were duly credited to the county of Vermillion in said State of Indiana, upon the dates of their said muster, under the call of the President of the United States for (300,-000) three hundred thousand men, made upon the 17th day of October, 1863. And I further certify that the quota of Vermillion county in said State of Indiana, under said call, was one hundred and four (104) men, and that the within named men, on pages 1, 2 and 3, were credited to said county of Vermillion, on her said quota, under the above mentioned call of October 17th, 1863, all of which appears by the original muster rolls and records now on file in my office, of which the within and foregoing are true copies.

" In witness whereof I have hereunto subscribed my name and affixed the seal of my office, at the city of Indianapolis, State of Indiana, this 26th day of April, A. D. 1880.

" [Seal.]          GEO. W. RUSS, Adjutant General, Ind."

This certificate was offered under section 283 of the Practice Act, which required the certificate to state that the copies

of the records or office books or parts thereof are "true and complete copies."

In *Board of Commissioners, etc.,* v. *May,* 67 Ind. 562, it was held that such a certificate, if certified in the mode prescribed by said section 283, was admissible; but a certificate that the copy is a true copy has been repeatedly held to be insufficient—it is not a compliance with the statute. *Tull* v. *David,* 27 Ind. 377; *Weston* v. *Lumley,* 33 Ind. 486; *Painter* v. *Hall,* 75 Ind. 208.

The court, therefore, erred in admitting the certificate in question, but it was a harmless error, because the appellant afterwards read in evidence a written instrument, certified to by the same officer, in which the certificate states that the foregoing "is a full, true and complete copy," which instrument shows every fact shown by the instrument introduced by the appellee. The error, therefore, in admitting the certificate in question will not avail to reverse the judgment. The other objection, to wit, that the copy certified does not show that the supposed records were made by any duly authorized officers can not be sustained. *Board, etc.,* v. *May, supra.*

The rules and regulations of the army are the law of the land. *Root* v. *Stevenson's Adm'r,* 24 Ind. 115; *Board of Commissioners, etc.,* v. *Mertz,* 27 Ind. 103.

The second reason alleged for a new trial is the exclusion of 104 certificates, of which the following is a specimen copy:

"No. 85.

"Camp Lindsay Barracks, Terre Haute, Ind., } March 7th, 1864. }

"This is to certify that John H. Bogart was enlisted in the United States service on the 19th day of December, 1863, in and from the county of Vermillion, State of Indiana, and was mustered in on the 7th day of March, 1864.

"Joseph D. Utter, Capt. Company.

"S. B. Bushnell, Surgeon in Charge.

"R. W. Thompson, Commandant of Camp."

This was offered under the following agreement: "That

the other 103 certificates were of like character as that concerning John H. Bogart, above copied, and that they all differed only in the name of the soldier, the times when he enlisted and was mustered, and company and regiment to which he was attached, and that the names of officers certifying are different, according to special facts regarding each soldier; that, as to muster, they showed the facts exactly as shown in the adjutant general's certified copy, read in evidence by the appellant; that, as to times of enlistment, they showed that of the 104 men certified to, nine enlisted from September 29th, 1863, to October 17th, 1863, sixteen enlisted on and from October 17th, 1863, to November 23d, 1863, and seventy-nine enlisted on and from November 23d, 1863, to January 1st, 1864; but that all enlisted before January 1st, 1864, and were mustered into the service of the United States as shown in said adjutant general's records, on or before the 7th day of March, 1864; and said copy of John H. Bogart's certificate to be taken as a copy of all of said 104 certificates, each to be modified as per statements above."

These certificates were clearly inadmissible; they are not public documents or official instruments required by law or by any army regulation. The county board might consent to receive such certificates as evidence of a claim for bounty, but such consent could not make them evidence against anybody else. The fact that they were found in the office of the auditor of Vermillion county did not make them part of the records of that office. They were, as to the plaintiff in this suit, mere private writings without authentication, by which he was in no respect bound. There was no error in excluding these certificates.

The only remaining reasons for a new trial are, that the verdict was not sustained by the evidence and is contrary to law.

The bounty was offered to those who should " enlist in the service of the United States to fill the quota of Vermillion county (104 men)," and the money was to be paid to such as

had "been duly received and mustered into the service of the United States."

The object of the bounty was to procure 104 men, to be credited on the quota of Vermillion county, under the President's call for 300,000 men in October, 1863.

The appellee re-enlisted as a veteran and was mustered in and credited to the county on January 1st, 1864.

If, at that time, 104 men had already been enlisted and credited to the county on said call, then the appellee ought not to recover.

The evidence shows that thirteen men enlisted before October 17th, 1863, the date of the call, thirty-two enlisted after October 17th, 1863, and before November 23d, 1863, the date of the offer of the bounty; seventy-five men enlisted after November 23d, 1863, and before January 1st, 1864; forty-two men enlisted on January 1st, 1864; 120 men, therefore, were enlisted before the appellee was enlisted. But of these 120 men only eighty-five were mustered before January 1st, 1864, that is, eighty-five were mustered before the plaintiff was mustered.

Then the question is, who is entitled to the bounty? Is it the man who has merely been enlisted, or the man who has been enlisted and mustered into the service of the United States?

The appellant says: "If the time of enlistment controls in filling a required quota, then before January 1st, 1864, 107 had enlisted to fill the quota of 104, after the proclamation of October 17th, 1863, and it was full."

The appellee claims that no man can be credited to a county upon its quota, until he is received and mustered into the service of the United States, and that the 104 men first mustered were the men credited to the county, and that they only, in the language of the order of the county board, enlisted "in the service of the United States to fill the quota" of the county under the call for 300,000 men.

Of the 120 men who were enlisted before the appellee was

enlisted, thirty-five were mustered after he was, and if the time of muster controls, nineteen of the forty-two men, including the appellee, who were enlisted and mustered on the 1st of January, 1864, are entitled to the bounty.

If the evidence had shown that the county had properly paid the bounty to nineteen of these men, it would have presented a different case; but there is no such evidence. The evidence shows that the appellee has complied with all the conditions of the order, and shows nothing in that respect as to the other eighteen. If the time of muster controls, the appellee ought to recover.

The county offered to pay for an "enlistment to fill the quota." A soldier's enlistment did not contribute to fill the quota until he was credited to the county by the proper authorities, and he could not be credited until he was mustered in.

Upon this point there were the following regulations of the army, of which this court is bound to take judicial notice:

"War Department, Adjutant General's Office, } "Washington, Jan. 12th, 1864. }

"Circular No. 3.

"The following instructions concerning credit on the quotas of States and towns are furnished for the information and guidance of all concerned:

"Recruits will be credited to the localities from which they received local bounties, provided the muster-in rolls show them enlisted and mustered in as of said localities. The muster-in rolls must show the facts of the case, and will be the evidence for awarding the credits.

"Veterans in service, re-enlisting, will be credited to the localities to which the re-enlistments and muster-in rolls show them as belonging. Therefore, until veterans have been re-mustered, it can not be determined to what particular locality they will be credited.        [Signed]    E. D. Townsend,

"Assistant Adjutant General."

The evidence shows that the appellee re-enlisted as a veteran at Indianola, Texas, on January 1st, 1864, and was mus-

tered in on the same day, and was credited to Vermillion county, Indiana.

The regulations above mentioned show that a soldier could not be credited to any locality until mustered in. We think, therefore, that the appellee and 103 others who were mustered in on or before January 1st, 1864, are the men whose enlistments filled the quota and saved Vermillion county from the draft, and that they are the men entitled to the bounty, rather than the men who enlisted before January 1st, 1864, and were not mustered in until afterwards. There was no error in overruling the motion for a new trial, and there is no available error in the record. The judgment of the court below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellant.