The Board of Commissioners of Cass County *v*. Crockett.

Filed June 21, 1887.

---

No. 13,133.

## THE BOARD OF COMMISSIONERS OF CASS COUNTY *v.* CROCKETT.

BOUNTY.—*Military Service.*—*Liability of County.*—*Contract.*—*Mutuality.*—*Statute of Limitations.*—Where, during the late war, a county appro-priated money to induce, by the payment of bounties, the enlistment of men in the military service of the United States to fill its quota under a call for additional troops, an agreement in writing on the part of men already in the service, procured by one not shown to have been an agent of the county, to accept the offered bounty and be credited to, such county, is not responsive to the proposition contained in the order of the county commissioners, but is more in the nature of a counter-proposition,.requiring a further order of the board to make it binding as a contract, and in the absence of such further order the contract can not be deemed one wholly in writing, and the six years' statute of limitations is a good defence to an action thereon.

SAME.—*Consideration.*—If a soldier was credited to a certain county at the time he was mustered in, or if such county then became entitled to have him so credited, any subsequent promise·made to him for the purpose of obtaining his consent to be credited to that county, was. without consideration.

From the Miami Circuit Court.

*S. T. McConnell* and *J. W. McGreevy*, for appellant.

*J. C. Nelson* and *Q. A. Myers*, for appellee.

The Board of Commissioners of Cass County *v.* Crockett.

NIBLACK, J.—From the pleadings and the evidence we make the following summary of what we regard as the essential facts of this case, and of the matters really in controversy between the parties : On the 2d day of January, 1864, Moses M. Crockett, the appellee, re-enlisted as a veteran soldier, in the service of the United States, and as a private in company D of the 46th regiment of Indiana Veteran Volunteers, and was, on that day, mustered into the military service of the United States. At the time of his re-enlistment he was a resident of Washington township, in the county of Cass, in this State. On the 3d day of January, 1865, the appellant, the Board of Commissioners of the County of Cass, in special session, made the following order : " Whereas, the President of the United States has issued his proclamation calling for 300,000 more men for service in the armies of the United States, to the end that the present rebellion against its authority may be speedily suppressed. And, whereas, the Governor of this State has, by his proclamation of the 30th of December, 1864, authorized the formation of eleven volunteer regiments, being one for each congressional district in this State, in anticipation of the State's quota under the call by the President. And, whereas, numerous petitions have been presented to the board to make an appropriation from the county treasury in order to aid in the raising of one or more military companies· within this county by offering bounties for volunteer enlistments, and it is believed to be the sentiment of the great proportion of the taxpayers of the county that such an appropriation should be made :

" *First.* Therefore be it now ordered by the Board of Commissioners of the County of Cass, that there be and hereby is appropriated from the county treasury, the sum of sixty thousand dollars for the raising and maintaining of military companies within the county of Cass for the service of the United States.

" *Second.* It is further ordered that so much only of the above sum be expended as is necessary to obtain by bounties

a number of men for said military companies equal to what
is the aggregate quota of the different townships of the county
under the last call of the President for 300,000 men to serve
in the armies of the United States.

"*Third.*    That for the proper disbursement of said sum of
sixty thousand dollars, or so much thereof as is required for
the purpose aforesaid, James A. Taylor, Daniel D. Pratt,
Thomas H. Wilson, Robert K. Rhea and Charles B. Knowl-
ton be and they are hereby appointed disbursing agents for
said county, said sum to be disbursed by them under and in
pursuance to the following regulations, to wit :

"*First.*    Said committee are instructed in the disbursement
of said appropriation to practice rigid economy to obtain re-
cruits at the lowest possible bounty ; and in no case to pay a
higher sum than $325 to any one volunteer.

"*Second.*    Said committee are instructed not to pay, or cause
to be paid, any of said sum to any volunteer until said vol-
unteer shall have been regularly mustered into the service
of the United States and duly credited to Cass county, In-
diana. "

This order contained other provisions, but they had refer-
ence only to the manner in which the committee, named as
above, should raise money on the credit of the county and
to the general policy to be observed in the disbursement of
the appropriation, and, hence, as will hereafter be seen, need
not be set out here.    Pratt and Wilson declined to serve on
the committee, and Daniel P. Baldwin and John C. Merriam
were afterwards appointed to fill the vacancies occasioned by
their declination.

After the entry of the foregoing order a question arose as
to whether Cass county had received credit for all the actual
residents of that county who had re-enlisted in the military
service of the United States, and in that connection it was
claimed that about eighty other residents of Cass county had
re-enlisted in the 46th regiment at the same time the appel-
lee had re-enlisted, as herein stated, and that the county had

not received the proper credit for these men from the military authorities either at Washington or Indianapolis.

The board again met in special session on the 23d day of February, 1865, and, on the succeeding day, made an additional order as follows:

"Whereas, the former appropriation made by this board of January 3d, 1865, of $60,000 for the raising and maintaining of military companies within the county of Cass for the service of the United States, in these words, (here insert) has proved insufficient, and a further appropriation is required; therefore, be it ordered by the Board of Commissioners of the County of Cass, in the State of Indiana, that there be, and the board hereby make, an additional appropriation from the county treasury of forty thousand ($40,000) dollars for the raising and maintaining of military companies within the county of Cass for the service of the United States.

"And it is further ordered, that the disbursement of the above appropriation shall be governed in all respects by the same rules and regulations which governed the appropriation of January 3d, 1865, except as to the clause limiting the committee to the payment of $325 to any one volunteer.

"And it is further ordered by the board that, whereas Cass county is entitled to a credit of eighty-one men for the re-enlisted veterans of the 46th regiment, as is acknowledged by the military authorities at Washington and Indianapolis, and we have been unjustly deprived of them, and have reason to believe that they have been given to substitute brokers at Indianapolis; therefore,

"*Resolved,* That we will fill our quota up to within eighty-one men, and then stop until an investigation is had, by military commission or otherwise, as to the reason for our being deprived of the same."

Persons had either been already, or were soon thereafter, sent both to Washington and to Indianapolis to investigate and to endeavor to adjust the claim to additional credits thus

emphasized and asserted by Cass county. The 46th regiment, referred to, was on duty at the city of Lexington, in the State of Kentucky, during the months of January, February and March, of the year 1865, and for some time thereafter, and there was evidence at the trial tending to prove that Mr. Pratt, one of the gentlemen originally named as a member of the recruiting committee, visited Lexington in the early part of March in that year for the purpose of, in some manner, getting the consent of the re-enlisted veterans of that regiment, whose places of residence were in Cass county, that they should be credited to that county, and that the appellee, and eighty-one other re-enlisted veterans, signed an agreement, in writing, authorizing Mr. Pratt to arrange to have them so credited. This agreement was alleged to be lost, and was hence not produced at the trial, but there was evidence further tending to show that it was in something like the following form :

"LEXINGTON, KY., March 10th, 1865.

"We, the undersigned, veterans of the 46th Regiment Indiana Volunteers, do hereby agree to accept the $325 bounty offered by Cass county, Indiana, and give our names and credit to said county under the now pending call for 300,-000 men, and authorize Daniel D. Pratt, as agent of said county, to be (at) all necessary steps to secure from the proper military authorities the credit of each and all our names to and for said county."

On the 16th day of March, 1865, the adjutant-general of this State telegraphed from Indianapolis to a citizen of Logansport, who had presumably interested himself in filling the quota of men for which Cass county was responsible, that Governor Morton had obtained the veteran credits of eighty-two men of the 46th regiment of Indiana Veteran Volunteers, and it thereafter became an admitted fact that Cass county had received credits accordingly, and the canvassing for volunteers to fill up the county's quota proceeded upon that theory. It also became, and still is, a conceded fact that

the appellee was one of the men for whom Cass county received a credit, as stated, and that the eighty-two men, referred to by the adjutant-general, included the eighty-one men for whom the county had theretofore claimed credit. In the fall of 1865, after the men, who had been so credited to Cass county, had been discharged from the military service, each claiming that he had become entitled to receive as a bounty from the county the sum of $325, demanded that sum of the board of commissioners, but failed to obtain either payment or recognition of his claim.

For some unexplained reason these claims for bounty were permitted to drift along in an unsettled condition until the 6th day of December, 1881, when the appellee commenced this action by filing a claim against Cass county before the board of commissioners of that county for the sum of $325, with interest from the time of the demand above set forth. The claim was rejected, and the appellee appealed to the circuit court, whence a change of venue was taken to the Miami Circuit Court. After the cause reached the circuit court the appellee filed an amended complaint, alleging in much greater detail the facts as we have given them, including those concerning which we have said there was evidence tending to prove. The appellant answered:

*First.* In denial.

*Secondly.* The six years statute of limitations.

*Thirdly.* A want of consideration.

A demurrer was sustained to the second paragraph of the answer, and a trial resulted in a verdict and judgment in favor of the appellee. Questions were reserved upon the pleadings and upon the sufficiency of the evidence to sustain the verdict.

The view we take of this case renders it unnecessary that we shall consider the sufficiency of the complaint. Touching its substantial character, we need only say that we do not regard it as counting upon a contract wholly in writing.

Both of the appropriations made by the board of commis-- sioners were, as must have been observed, for the raising and maintaining of military companies within the county of Cass for the service of the United States, and, hence, were plainly intended only to procure the voluntary enlistment of men not already in the military service. The call of the President was upon its face a call for additional men to be added to the military forces already in the field, and the appropri- ations were obviously made in aid of the object which the President thus had in view in making the call. The rais- ing of additional troops involved an important question of public policy. The adjustment of the credits for troops al- ready in the service presented a question of only incidental and much inferior importance. The offer, therefore, of bounties as an inducement to men to thereafter enter the army, and to thus increase its numerical force, was a very different thing from offering bounties to men already in the army as a means of swelling the credits to which the county was entitled under some previous call. Consequently the propositions contained in the orders of the board herein- above set out were not addressed to men who were already in the military service of the United States, but to another and entirely different class of persons. It follows that the agreement alleged to have been entered into by the appellee and other veterans on the 10th day of March, 1865, was neither responsive to, nor an acceptance of, any proposition contained in those orders. That agreement was rather in the nature of a counter-proposition which would have required the further order of the board to have made it mutually binding as a contract between the parties. No such further order of the board was averred in the complaint, and, hence, the complaint was not based wholly upon a contract in writ- ing, if, indeed, upon any well pleaded contract.

Under such circumstances the six years statute of limita- tions was a good defence to the action, and the circuit court erred in sustaining a demurrer to the paragraph of answer

setting up that statute. *Board, etc.*, v. *Shipley,* 77 Ind. 553; *High* v. *Board, etc.*, 92 Ind. 580; *Hackleman* v. *Board, etc.*, 94 Ind. 36.

At the trial there was no evidence either showing or tending to show that the proposition contained in the alleged agreement of the 10th of March, 1865, signed by the appellee and others, was ever accepted by the appellant, or any one acting in its behalf, or had anything whatever to do in procuring the appellee's previous re-enlistment to be credited to Cass county. On the contrary, the appellee's muster-in roll, which was read in evidence, described him as a resident of Washington township, Cass county, at the time of his re-enlistment, and, therefore, contained facts tending to prove that, in legal contemplation, the appellee was credited to Cass county when he was mustered into the service under his re-enlistment. *Board, etc.*, v. *Hammond,* 83 Ind. 453; 13 United States Statutes at ·Large, 489, sections 13 and 14.

Neither was it shown that Mr. Pratt was at any time agent of Cass county, either for obtaining recruits or credits of men for that county.

If, as a matter of law, the appellee was credited to Cass county, at the time he was so mustered in, or that county then became entitled to have him so credited, any subsequent promise made to him for the purpose of obtaining his consent to be credited to Cass county was without consideration.

The conclusion to which we feel constrained to come, is that the verdict was not sustained by sufficient evidence, and that, for that reason, a new trial ought to have been ordered.

The judgment is reversed, with costs, and the cause is remanded for further proceedings.

Filed June 21, 1887.