Filed November 1, 1895.

No. 17,463.

## STUMPH ET AL. *v.* MILLER.

HARMLESS ERROR.—*Evidence.*—The admission of improper evidence which only tends to prove a fact otherwise clearly shown by competent evidence, is harmless error.

EVIDENCE.—*Nonexpert.—Opinion.—Physical and Mental Condition of Another.*—A nonexpert witness may state his opinion as to the mental condition of another, in connection with a statement of the facts upon which it is based, if such facts show that he is acquainted with the person, has had opportunity to observe him, and has observed him.

SAME.—*Mental Condition of Grantor Preceding Date of Execution of Deed.* — The mental condition of the grantor a few months preceding the date of the execution of a deed may be shown under an allegation of mental incapacity to execute the same, due to extreme age and to sickness extending back of the time to which the evidence relates.

SPECIAL FINDING.—*Time of Making Request.—When Discretionary.*— It is discretionary with the court whether it will make a special finding of the facts, where the request therefor is not made until substantially all the evidence has been heard, under section 546, 560, R. S. 1894. (sections 537, 551, R. S. 1881.)

From the Marion Superior Court.

*J. E. Franklin* and *G. W. Woods,* for appellants.

*J. M. Bailey,* for appellee.

HOWARD, C. J.—The appellee alleges in her complaint

that the appellant Carrie V. Stumph is her daughter, and the appellant Henry Stumph her son-in-law; that at the times of the transactions herein complained of, the appellee was extremely aged, being nearly eighty years old; that she is very illiterate, and for the three years previous to the filing of her complaint, covering also the time of the acts herein alleged, she was sick and afflicted, causing mental and physical weakness, which greatly enfeebled her will power, and weakened her judgment, and rendered her incapable of transacting business; that, by reason of her enfeebled mind, and of her age and sickness, she was incapable of exercising her own judgment, and could easily be persuaded by the use of improper influences, and promises, and threats, to do things greatly to her disadvantage; that the appellants, well knowing the said condition of appellee, and knowing the influence which they had over her, by reason of their said relationship to her, did, for the purpose of cheating and defrauding her out of the real estate here in controversy, unduly influence, intimidate, threaten, coerce, and make false promises to her, by all of which they procured her to make a deed for said real estate to the appellant Carrie V. Stumph; that no consideration whatever was given for said deed, but a consideration of $1,000.00 was inserted in the deed, whereas the real estate is of the value of $2,000.00.

In a second paragraph of complaint appellee sets out the same facts as in the first paragraph, and states, in addition, that up to June, 1892, she was living on her said lot in the city of Indianapolis with another daughter and her husband, Charles Rose, under a contract with said Rose, when, by the persuasion of the appellants, she was induced to leave her place and go to live with appellants; that a short time after she went to live with them, appellants began their importunities, threats and

solicitations, to induce her to deed to them her property, threatening to drive her from their home, if she did not do so; that the appellant Carrie V. Stumph at times, would come to the appellee in tears, and seemingly in great anguish, and plead and beg and persuade her to deed the property; that, so persuaded, threatened and coerced, she did, in August, 1892, make the deed without consideration; that after the deed was so made, the appellants treated appellee in a cruel and inhuman manner, confined her in a room, refused her sufficient food and water, when she pleaded in tears for the same, compelled her to remain undressed day and night, and took her dress out of her room, so that she could not leave the house; that, after bearing this treatment as long as she could, she stole out of the house in her night clothes, at eleven o'clock in the night, and walked for hours upon the streets, until some person, unknown to her, returned her to the home of her other son-in-law, Charles Rose. Other acts of cruelty, fraud, and deception in the procurement of the deed are alleged, and the court is asked to set aside the deed and appoint a commissioner to re-convey the property to appellee.

There was an answer in general denial, and the cause was submitted to the court. On hearing the evidence, there was a finding for the appellee.

The only assignment of error, discussed by counsel, is the overruling of a motion for a new trial.

The complaint alleges that the appellee's mental and physical health was greatly impaired for three years before the bringing of the suit, which was for over two years previous to the date of making the deed. As bearing on the question of her health, Dr. W. H. Haines, a witness for the appellee, was asked whether he saw her in the winter or spring of 1892. This was objected to, for the reason that enquiry as to appellee's mental

condition should be confined to about the date of the deed, August 1, 1892.

We can see no impropriety in the question as put. It was alleged that her mental and physical condition, when the deed was made, was due to extreme age and to sickness. The sickness, as alleged, extended far back of the winter and spring of 1892, and it was pertinent to enquire into her condition throughout the period, during which her alleged debilitated condition was coming on, so that the court might better understand her condition at the time of the transaction complained of. Imbecility, due to age and ill health, is brought on by causes and conditions, which may extend back for some time previous to the actual weakness of mind, resulting from such causes.

In any event, the admission of the evidence was harmless, inasmuch as the evidence, so admitted, but tended to show the enfeebled condition of appellee, in body and mind, which condition was abundantly proved by other evidence, given without objection by the same witness, and also by evidence, given by Dr. Butterfield, a witness introduced by appellants themselves. The admission of improper evidence, which only tends to prove a fact otherwise clearly shown by competent evidence, is harmless error. *Board, etc.,* v. *Hammond,* 83 Ind. 453 ; *Holliday* v. *Thomas,* 90 Ind. 398 ; *Citizens' State Bank* v. *Adams,* 91 Ind. 280.

Moreover, if appellee was feeble-minded in the spring of 1892, it would be presumed, in the absence of evidence to the contrary, that this condition continued until the first of August thereafter, when the deed was made. In matters of evidence, as said in *Adams, Ass'nee,* v. *State,* 87 Ind. 573 : "It is a fundamental doctrine, that when a fact is once shown to exist, the presumption is that it continues to exist, and this presumption stands good

till the contrary is shown or a countervailing presumption is raised. Taylor Ev., section 155 ; 1 Greenl. Ev., section 41 ; Whart. Ev., section 1284 ; Burrill Cir. Ev., 528."

It is objected that two of the witnesses, John Furnas and Samuel Friesner, were permitted to give to the court their opinions as to the mental condition of the appellee. The facts upon which the opinions of the witnesses were based, were also given. It has frequently been held that when a witness gives the facts upon which he bases his opinion, as to the condition of the mind or body of a person, the opinion itself may also be given, provided the facts show that he is acquainted with the person, has had opportunity to observe, and has observed him. It may be that the witness is unable to place before the court all the facts upon which he bases his opinion, but if he shows acquaintance with the person, and opportunity for observation, and that he has observed, that will be sufficient upon which to base an opinion. *Colee* v. *State*, 75 Ind. 511 ; *Johnson, Admr.,* v. *Culver, Admx.*, 116 Ind. 278 ; *Carthage Turnp. Co.* v. *Andrews*, 102 Ind. 138.

. Counsel next complain of the refusal of the court to make a special finding of the facts, when requested by appellants. This request was made eleven days after the trial began, after the evidence had been substantially all heard, and just before the argument. We think the request came too late. The court should have had an opportunity to take notes of the evidence, so as to make an impartial and accurate finding. By listening attentively to all the evidence, the court may be enabled to make a correct general finding ; but to make a special finding of the facts, it is necessary to note carefully the evidence, as it is given. This the statute pro-

vides for, section 546, R. S. 1894 (section 537, R. S. 1881); section 560, R. S. 1894 (section 551, R. S. 1881).

In *Hartlep* v. *Cole*, 120 Ind. 247, it was said : "We are of the opinion that if the request for a special finding is not made at the commencement of the trial, the right thereto is waived, and thereafter it becomes a question within the sound discretion of the court, whether it will make a special finding or not." See, also, *Miller* v. *Lively*, 1 Ind. App. 6.

While, therefore, by the aid of the stenographer's notes, or otherwise, the court may make a special finding of the facts, when requested, at any time before the entry of judgment (*Thompson* v. *Connecticut, etc., Co.*, 139 Ind. 325), yet the reasoning in the case of *Hartlep* v. *Cole, supra*, makes it clear that it must remain discretionary with the court, whether such finding shall be made in case the request does not come before the introduction of the evidence.

It is finally argued that the judgment is not supported by the evidence. Not only do we think there is sufficient evidence to sustain the judgment, but we think the evidence abundantly shows a case of unusual wrong-doing and oppression against this helpless and partially demented woman, on the part of her daughter and the daughter's husband. The case is, in many respects, like that of *Ashmead* v. *Reynolds*, 134 Ind. 139 (39 Am. St. Rep. 238), and is, we think, ruled by that case and the authorities there cited.

The judgment is affirmed.

Filed November 5, 1895.