MASSACHUSETTS BONDING AND INSURANCE COMPANY
ET AL. *v.* STATE OF INDIANA, EX REL. GARY.

[No. 23,974. Filed May 31, 1921. Rehearing denied February 21, 1922.]

1. INTOXICATING LIQUORS.— *Illegal Sales.— Loss of Support.— Action on Bond.—Parties.—Statutes.*—An action on a retail liquor license bond, given in pursuance to §8323g Burns 1914, Acts 1911 p. 244, to recover for loss of support, may be brought, under §253 Burns 1914, §253 R. S. 1881, in the name of the State of Indiana on the relation of the persons sustaining the injury. p. 598.

2. INTOXICATING LIQUORS.— *Illegal Sales.— Action.— Complaint. —Sufficiency.—Statute.*—In an action on a retail liquor license bond, given in pursuance to §8323g Burns 1914, Acts 1911 p. 244, by the State of Indiana on the relation of the widow and children of a person killed while intoxicated, to recover for loss of support, a complaint alleging a sale of liquor to decedent while he was intoxicated, in violation of §2484 Burns 1914, Acts 1905 p. 584, §573, *held* good as against demurrer for want of facts. p. 598.

3. TRIAL.—*Instructions.—Consideration as a Whole.—Harmless Error.*—Instructions are to be considered as an entirety, and if, when so considered, or from the entire record, it affirmatively appears that the substantial rights of the complaining party were not prejudiced by instructions challenged, a reversal of the judgment for that reason alone will not be ordered, although such instructions, when separately considered, may appear to be objectionable. p. 601.

4. APPEAL.—*Review.—Erroneous Instructions.—Cure by Other Instructions.*—In an action on a retail liquor license bond, in which defendant liquor dealer contended that prior to the alleged unlawful sales of intoxicating liquors he had disposed of his business, and the plaintiff claimed that the sale had not been consummated, the fact that instructions given at plain-

tiff's request might have been misleading, in that the jury was left in doubt as to whether it was necessary to have the consent of the board of county commissioners to a sale of the business, or to a transfer of the license, or to both, *held* not to warrant a reversal, where other instructions clearly informed the jury that a licensed retail liquor dealer actually engaged in the saloon business might lawfully sell his stock of goods and fixtures and quit the business without the consent of the board of county commissioners or the transfer of the license and without being liable personally or on his bond for illegal sales by his successor. p. 602.

5. INTOXICATING LIQUORS.—*Illegal Sales.—Action on Liquor Dealers' Bond.—Jury Questions.—Sale of Business.*—In an action on a retail liquor dealer's bond, in which defendant liquor dealer contended that prior to the alleged unlawful sales he had sold his business, the question whether a *bona fide* sale was consummated prior to the transfer of the license was for the jury. p. 603.

6. EVIDENCE.—*Admissibility.—Record of Proceedings by Board of County Commissioners.— Certification.— Statutes.*— Under §5983 Burns.1914, §5743 R. S. 1881, providing that the commissioners of each county shall use a common seal, and copies of their proceedings, when signed and sealed by the auditor, shall be sufficient evidence thereof on the trial of any cause, an application for the renewal of a retail liquor license, and an application for the purchase of such license, are admissible in evidence when certified to by the county auditor. p. 606.

7. APPEAL.—*Review.—Admission of Evidence.—Objections not Stated.—Waiver.*—In an action on a retail liquor dealer's bond, where objections to the introduction in evidence of a certified copy of a retailer's liquor license was made solely on the ground that there was no law authorizing the auditor to keep a copy of the license on file in his office, etc., an objection that the copy was not sealed by the auditor was waived. p. 607.

8. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.*—In an action on a retail liquor dealer's bond error if any, in admitting in evidence a certified copy of a retailer's license granted defendant; which copy was offered solely for the purpose of showing that defendant was a licensed dealer and had an unexpired license, was harmless, where such facts were conclusively proven by other competent and uncontroverted evidence. p. 607.

9. APPEAL.—*Review.—Burden of Showing Prejudicial Error.*—A party seeking a reversal of a judgment must not only show error, but that it was harmful to him. p. 609.

NOVEMBER TERM, 1921.    597

Massachusetts, etc.,. Ins. Co. *v.* State, ex rel.—191 Ind. 595.

10.  APPEAL.—*Right Result.*—*Disregard of Intervening Errors.*—
Where the record on appeal shows that a fair trial was had,
and that any intervening errors had no effect on the verdict,
such errors will be disregarded.  p. 609.

From Knox Circuit Court; *B. M. Willoughby,* Judge.

Action by the State of Indiana, on the relation of
Addie Gary, and others, against the Massachusetts
Bonding and Insurance Company and others.   From a
judgment for relators, the defendants appeal.   (Trans-
ferred from the Appellate Court under §1394, cl. 2,
Burns 1914, Acts 1901 p. 565.)   *Affirmed.*

*Bailey & Young* and *Padgett & Clark,* for appellants.
*A. M. Beasley* and *Charles E. Henderson,* for appellee.

MYERS, J.—This was an action on a retail liquor li-
cense bond by the State of Indiana upon the relation of
appellees, the widow and children of William T. Gary,
deceased, against appellants to recover damages for loss
of support.

It appears from the first paragraph of the complaint
that appellant, Alvin Booker, was duly licensed and en-
gaged in the sale of intoxicating liquor at White Rose
in Greene county; that he executed the usual retailer's
liquor bond with appellant, The Massachusetts Bonding
and Insurance Company as surety thereon; that on Jan-
uary 13, 1914, Booker unlawfully·sold intoxicating liq-
uor to Gary who was then and there, as Booker well
knew, in a state of intoxication, and who, on drink-
ing this liquor, became crazed and unconscious of his
surroundings, and while in this condition, to the knowl-
edge of Booker, he attempted to walk home and in so
doing wandered upon the railroad tracks of the Van-
dalia Railroad Company where he was struck by one of
its trains and killed.

The second paragraph states substantially the same

facts as the first, except that it alleges that the unlawful sale was made by Booker's bartender and agent.

By a demurrer to each paragraph of the complaint, it was urged that plaintiffs had no legal capacity to maintain this action, and that neither paragraph, separately considered, stated facts sufficient to constitute a cause of action. Answer in denial, trial, verdict and judgment on the verdict for $3,500. The overruling of the demurrer to each paragraph of the complaint and the overruling of appellants' motion for a new trial, are the only errors assigned.

As shown by the complaint, the bond in this case was payable to the State of Indiana and was given in compliance with §4, Acts 1911 p. 244, §8323g Burns 1. 1914. As to appellants' first ground of demurrer, it is sufficient to say that this action was properly brought in the name of the State of Indiana on the relation of the persons who sustained the damage. §253 Burns 1914, §253 R. S. 1881; *Wall* v. *State, ex rel.* (1894), 10 Ind. App. 530, 38 N. E. 190; *State, ex rel.* v. *Soale, Admr.* (1905), 36 Ind. App. 73, 74 N. E. 1111.

The allegations of the complaint show that the sales made to the husband and father of appellees were in violation of §573, Acts 1905 p. 584, §2484 Burns 2. 1914. The first paragraph of the complaint charged Booker, and the second, Booker by his bartender and agent with the violation of a positive law in knowingly selling to Gary intoxicating liquor while he was in a state of intoxication. As required by §4, *supra,* the bond given by Booker was made payable to the State of Indiana and conditioned "for the payment of all judgments or civil damages growing out of unlawful sales of intoxicating liquor or other unlawful conduct on his (Booker's) part in and about said business." Appellees, the widow and children of the deceased, as dependents and in the consideration of damages, were

NOVEMBER TERM, 1921.        599

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—191 Ind. 595.

parties interested (§253, *supra*) in the death of Gary alleged to have been caused by the unlawful sales of liquor to him by Booker, and as "every action must be prosecuted in the name of the real party in interest, except as otherwise provided," (§251 Burns 1914, §251 R. S. 1881), we hold that the action for damages, as set forth in the complaint herein, was authorized by law, and that the complaint and each paragraph thereof was otherwise sufficient to repel the demurrer for want of facts. *Beem* v. *Chestnut* (1889), 120 Ind. 390, 22 N. E. 303; *Homire* v. *Halfman* (1901), 156 Ind. 470, 60 N. E. 154; *State, ex rel.,* v. *Terheide* (1906), 166 Ind. 689, 78 N. E. 195; *Greener* v. *Niehaus* (1909), 44 Ind. App. 674, 89 N. E. 377.

The only specifications in the motion for a new trial relied on by appellants for a reversal of the judgment, as appears from their brief under the heading of "Points and Authorities," require us to consider instructions Nos. 2 and 3 given by the court at the request of plaintiffs; instruction No. 7 given by the court on its own motion; the court's refusal to give instruction No. 10 requested by the bonding company; and the admission in evidence over appellants' objection copies of certain records and other instruments as certified by the auditor of Greene county.

The record affirmatively shows that instruction No. 10 was given by the court. In fact, all of the instructions, eighteen in number, tendered by and on behalf of the bonding company, were given by the court except instruction No. 13. The questions discussed, with reference to the asserted objectionable instructions, pertain to the theory of the defense which was, that prior to the alleged sale of intoxicating liquor, Booker had sold his saloon including his stock of liquors, furniture and fixtures to one Callahan who had taken possession of the same and was running it on his own account, and

600    SUPREME COURT OF INDIANA,

Massachusetts, etc., Ins. Co. v. State, ex rel.—191 Ind. 595.

that Booker, at the time the liquor was sold to Gary, had no interest or connection with the business whatever. To that contention appellees insist that under the evidence the jury was clearly authorized to find that such pretended sale by Booker to Callahan was a mere sham, and that in fact no sale was consummated until some time after the illegal sales charged in the complaint were made.

It appears from the undisputed testimony of Booker, that prior to the alleged unlawful sales of liquor to Gary, he agreed to and did sell his stock of liquors, his furniture and fixtures to Callahan; that he turned over to Callahan the keys to the building and put him in possession of the place described in his license, knowing that Callahan intended to continue the saloon business at that place. There was evidence also tending to show that as a part of the bargain Booker agreed to transfer his license to Callahan, which was eventually done in the manner prescribed by statute, but not until after the death of Gary. There was also evidence from which the jury might properly have inferred an agreement between Booker and Callahan that the latter should operate the place as Booker's agent and under Booker's license until such license could be legally transferred to Callahan. That Booker frequently waited on customers from the time of the claimed property sale until the day of the alleged unlawful sale of liquor, and that one Hudson was Booker's bartender prior to the asserted sale to Callahan, and thereafter continued in the business as bartender and sold the liquor to Gary.

As pertinent to the facts and the evidence from which the inferences mentioned might readily have been drawn, the court by instruction No. 2 charged the jury, in effect, that if the place was conducted as a saloon by Callahan under Booker's license, and prior to the transfer thereof, with the full knowledge, permission, con-

NOVEMBER TERM, 1921.     601

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—191 Ind. 595.

sent and acquiescence of Booker, then there was not such a sale and transfer of the saloon business as would relieve Booker from liability on his bond. And by instruction No. 3, in so far as the same is material to any question raised, the jury, in effect, were told that if from the evidence it appears that through an intended sale the business was to be transferred to Callahan, but that no proceedings were had before the board of commissioners authorizing the sale and transfer before the death of Gary, and that Hudson had been the agent of Booker, and thereafter continued to conduct it with the full knowledge and consent of Booker, and had made the unlawful sales to Gary, then you would have the right to find as a fact that Hudson was the agent of Booker in making the alleged sales of liquor.

The objection to these instructions collectively was, that they informed the jury as a matter of law that a saloon keeper could not sell his fixtures and stock without first getting the consent of the board of county commissioners to sell the license to the same purchaser. We are not persuaded that the jury would so understand these instructions. It is apparent from the language used that the jury were thereby informed that a sale depending upon the action of the board of commissioners transferring the license of Booker to Callahan, would, in law, not be such a sale as would relieve the seller from the responsibility of the acts of those by him placed in charge of the business under his license prior to the consummation of the sale.

As to instruction No. 3 it is further urged that it tended to confuse the jury, in that it was so worded as to leave the jury in doubt as to whether it was necessary to have the consent of the board of commissioners to a sale of the business, or to the transfer of the license, or to both. This instruction is justly subject to the criticism suggested, and for that

602     SUPREME COURT OF INDIANA,

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—191 Ind. 595.

reason it must be disapproved. Whether this instruction will justify a reversal of the judgment in this case is another question. Instructions to the jury are to be considered as an entirety, and if by so doing, or from the entire record, it affirmatively appears that the substantial rights of the complaining party would not be prejudiced by the challenged instruction, a reversal of the judgment for that reason alone will not be ordered, although such instruction, when separately considered, may appear to be objectionable. *Indianapolis St. R. Co.* v. *Schomberg* (1905), 164 Ind. 111, 72 N. E. 1041; *Inland Steel Co.* v. *Ilko* (1913), 181 Ind. 72, 103 N. E. 7; *Mishler* v. *Chicago, etc., R. Co.* (1919), 188 Ind. 189, 122 N. E. 657; *Indiana Match Co.* v. *Kennedy* (1910), 45 Ind. App. 627, 90 N. E. 486; *Kuhn* v. *Bowman* (1910), 46 Ind. App. 677, 93 N. E. 455; *First Nat. Bank* v. *Ransford* (1913), 55 Ind. App. 663, 104 N. E. 604.

The instructions given at the request of the bonding company were clearly worded, unmistakable in meaning, and were sufficient to inform the jury that a licensed retail liquor dealer actually engaged in the business of selling intoxicating liquor may lawfully sell his stock of goods and fixtures, and quit the business at any time without the consent of the board of county commissioners, and without being liable personally or on his bond for illegal sales made by his successor, although the latter should continue the business in the same place. But the authority to transfer such license must be granted by said board, and until granted, any such sales made by either of them must be regarded as sales made without a license. Moreover, it appears from the answers of the jury to interrogatories requested by the bonding company, that Booker did not sell his stock of goods and fixtures to Callahan at the time claimed by him, nor did he, at that time, quit the business, but he did, by his agent, sell

·NOVEMBER TERM, 1921.    603

Massachusetts, etc., Ins. Co. v. State, ex rel.—191 Ind. 595.

intoxicating liquor to William Gary on the day the latter was killed.

Whether Booker made a *bona fide* consummated sale to Callahan, prior to the transfer of the license, was a question for the jury. *Lawlor* v. *State, ex rel.* 5. (1912), 53 Ind. App. 24, 99 N. E. 487. The general verdict amounted to a finding that he did not. The answers of the jury to interrogatories are in keeping with the general verdict, so that if there was no sale until after the alleged unlawful sales of liquor, the verdict was right and the judgment should be upheld, notwithstanding the defect pointed out in the particular instruction.

The objection to instruction No. 7 presents the same question as that presented by the demurrer to the complaint. Having held that the complaint stated a cause of action, it follows that this instruction was properly given.

Appellants also earnestly insist that the trial court erred in permitting plaintiffs, over their separate and several objections, to introduce in evidence as a part of plaintiffs' original case, exhibits "A" and "B."

Exhibit "A" purports to be a certified copy of an application to the board of commissioners of Greene county, Indiana, by Alvin Booker for a renewal of a liquor license, dated August 4, 1913, and a copy of a retailer's bond also dated August 4, 1913, to which is attached the following certificate:

> "I, GEORGE E. KIDD, Auditor in and for the County of Greene, State of Indiana, hereby certify that the foregoing is a true copy of the Bond and Application for Renewal of Liquor License of Alvin Booker, as shown by the records in the Auditor's office of Greene County, Indiana. In witness whereof I have hereunto set my hand this 19th day of February, 1915.
>
> GEORGE E. KIDD,
> (Seal)          Auditor, Greene County, Ind."

The objection interposed to the admission of this exhibit was "We object to the introduction of the certified copy in evidence for the reason it is not properly and sufficiently certified to."

Exhibit "B" was a copy of a renewal of a retailer's liquor license granted by the board of commissioners of Greene county, Indiana, to Alvin Booker for one year from August 4, 1913, given under the hand of the auditor of Greene county with the seal of the board of commissioners affixed thereto. The certificate to this exhibit follows:

> "I, GEORGE E. KIDD, Auditor in and for the County of Greene in the State of Indiana, hereby certify that the within is a true copy of the renewal of license issued to Alvin Booker on the 4th day of August, 1913. This 19th day of February, 1915.
>                                 GEORGE E. KIDD,
>                           Auditor Greene County, Ind.
>                           By Daniel A. Bynum, Deputy."

The grounds of objection to the introduction of this exhibit were "We object to the introduction of Exhibit 'B' for the reason that it purports to be a copy of a license, and we know of no law that authorizes the Auditor to keep a copy of the license on file in his office, and he is only authorized to certify to the records which the law requires him to keep, and the original license itself would be the proper evidence." The trial court then said: "Are there any other objections? Any other statements?" Counsel for appellants replied: "I think our objections cover them."

Appellees in rebuttal introduced in evidence over appellants' objection exhibit "C." This exhibit includes a copy of the following papers and orders of the board: (1) A copy of a notice given by publication, that the applicant, Oral Callahan, will apply to the board of commissioners at its January term, 1914, "for permission

to purchase the license to retail liquor granted by the Greene county board of commissioners at its August term, 1913 to Alvin Booker, and to continue said business for the unexpired term of said license in the same premises described as follows:" Premises described. (2) A copy of proof of publication of said notice made on January 3, 1914; (3) A copy of a petition addressed to the board of commissioners of Greene county and signed by Alvin Booker, dated January 3, 1914, stating among other things that he is the owner of a retail liquor license granted to him by said board on the first Monday of August, 1913, and asking that he be permitted to sell and transfer said license to Oral Callahan of Stockton township, Greene county, Indiana; (4) A copy of an application signed by Oral Callahan and dated January 3, 1914, addressed to the board of county commissioners of Greene county, Indiana, showing among other things that he had given notice, by publication in the Linton Citizen, a daily newspaper of general circulation printed in the city of Linton, and proof of such notice made part of his application, of his intention to apply to said board for leave to purchase the retail liquor license of Alvin Booker and granted to him by said board on the first Monday of August, 1913.

(5) "IN COMMISSIONERS' COURT.
                         JANUARY TERM.
In the matter of the Application of Oral Callahan to purchase liquor license.

2" day—continued."

(6) "IN COMMISSIONERS' COURT.
                         MARCH TERM.
In the matter of the Application of Oral Callahan to purchase liquor license, filed Jan. 5", 1914.

1" day—This cause having been continued from the January term, the evidence is now heard, application to purchase granted and the license ordered issued and transferred to applicant."

This exhibit closes with the following certificate:

"I, GEORGE E. KIDD, Auditor in and for the County of Greene and State of Indiana, hereby certify that the foregoing is a true and complete copy of the proceedings in the above named cause, as shown by the record in the Auditor's office of Greene County, Indiana. Signed this 1" day of May, 1917.

GEORGE E. KIDD,
(Seal)                    Auditor, Greene County, Ind."

The objection to the introduction in evidence of exhibit "C," in substance, was that the same was not properly and sufficiently certified by the auditor of Greene county in that each copy set forth in the exhibit, separately and severally, was not covered, separately and severally, by the auditor's certificate.

Appellants, in support of their contention that the court erred in admitting in evidence the foregoing exhibits, have called our attention to §329 of an act concerning proceedings in civil cases, (Acts 1881 p. 240, §478 Burns 1914) and numerous decisions of this court as to the requirements of that section of our Code in order to make copies of records and other instruments admissible in evidence in courts of this state. We see no room for debate over the requirements of a proper authentication of copies of records, books and other instruments as required by §478, *supra;* nor do we have any fault to find with the precedents of this court based upon that statute, as it is not involved in the determination of the questions presented in the case before us.

On June 17, 1852, an act was approved providing for the organization of county boards and prescribing some of their powers and duties, in force May 6, 1853, wherein by §10 (§5983 Burns 1914, §5743 R. S. 1881) which is still in force, it is provided that "The commissioners

NOVEMBER TERM, 1921. 607

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—191 Ind. 595.

of each county shall use a common seal; and copies of their proceedings, when signed and sealed by the said auditor, shall be sufficient evidence thereof, on the trial of any cause in any of the courts of this state."

The exhibits in the instant case had to do with proceedings and matters had before and determined by the board of commissioners of Greene county. Hence, we hold that the questions now before us must be decided in the light of the statute above quoted, wherein copies of the proceedings only are required and when signed and sealed by the county auditor, they are properly authenticated and are admissible in evidence on the trial of any cause in any of the courts of this state. In this case, the auditor in each certification used the words "true copy;" he signed the certificate and affixed

7. the seal, except as to exhibit "B", the seal was omitted. However, this omission was not made a ground of objection, hence we hold that appellants waived that omission by confining their objections to the statement "we know of no law that authorizes the auditor to keep a copy of the license on file in his office, etc." *Chandler* v. *Beal* (1892), 132 Ind. 596, 32 N. E. 597.

Conceding that there is no statute expressly requiring a county auditor of this state to keep a record of or copy of a renewal liquor license on file in his office,

8. and it not appearing that any preliminary proof was made showing the loss of the original license, or that the holder of such license had been called on to produce it, or that a copy thereof had been made a matter of record as a part of the order granting such renewal, or that a copy had been actually deposited with such auditor as a paper or document required by him to preserve under §9458 Burns 1914, §5895 R. S. 1881, the objection lodged against the admission of exhibit "B" in evidence presents a question unnecessary for us

to decide, in view of the evidence disclosed by the record in this case.

In the instant case there was competent and uncontradicted testimony before the jury other than exhibit "B", showing that Booker, prior to November, 1913, was engaged in conducting a saloon at the place where it is alleged the illegal sales of liquor were made to Gary, under a renewal license granted by the board of commissioners of Greene county. Booker testified that he was the sole owner and operated a saloon at that place until November, 1913, under a retailer's license obtained by him in August before. The only purpose for introducing exhibit "B" in evidence was that it tended to show that Booker was a licensed dealer and had an unexpired license. These facts were not controverted. In the trial court the defendants submitted the question of their liability on the proposition that Booker, in November, 1913, and prior to the unlawful sales of liquor to Gary, had sold his stock of liquors and furniture to Callahan, and in nowise thereafter had anything to do with the business which was conducted exclusively by Callahan on his own account. Hence it may be admitted that the admission of exhibit "B" in evidence was improper, yet it tended only to establish a fact conclusively proven by other competent and uncontroverted evidence. Under this state of the record, the error of which appellants complain, cannot be regarded as prejudicial to any of their substantial rights. *Ohio Valley Trust Co.* v. *Wernke* (1912), 179 Ind. 49, 99 N. E. 734; *Board, etc.* v. *Hammond* (1882), 83 Ind. 453; *Holliday* v. *Thomas* (1883), 90 Ind. 398; *Citizens' State Bank* v. *Adams* (1883), 91 Ind. 280; *Culver, Admx.*, v. *Marks* (1890), 122 Ind. 554, 23 N. E. 1086; *Stumph* v. *Miller* (1895), 142 Ind. 442, 41 N. E. 812.

The conclusion last announced rests on the rule that a party who seeks a reversal of a judgment must not

only show error but that such error was harmful to him. *Levi* v. *Drudge* (1894), 139 Ind. 458, 39 N. E. 45. While appellants have not pressed their objection interposed to the admission of exhibit "C" in evidence, yet we have examined the question and reached the conclusion that the objection was not well taken.

After a careful consideration of the entire record before us, we are convinced that a fair trial was had, and that any intervening errors must be disregarded, as they had no effect upon the verdict. *Van Natta* v. *Van Natta* (1919), 188 Ind. 75, 78, 121 N. E. 825. Judgment affirmed.

Willoughby, J., not participating.