Filed October 18, 1883.

---

No. 10,440.

## WELLS *v.* MORRISON.

CONTRACT.—*Consideration.—Pleading. — Instruction. — Practice.*—To a suit against A. and B. upon their written promise to pay a certain sum of money, A. answered (1) that the plaintiff accepted from him a sum less than the amount due, in satisfaction of his promise, and gave him a written release therefrom; (2) that being insolvent and largely indebted to one C., he had delivered to him as security certain bonds, which he had sold to apply on such indebtedness, but, by an agreement between C. and the plaintiff, C. paid to him a certain sum in full satisfaction of A.'s liability on the promise, sued on, and in writing released him from all liability. Reply (1) that the release was obtained by false and fraudulent representations; (2) that, by reason of such false and fradulent representations, there was a failure of the consideration of the release.

*Held*, that the replies were sufficient on demurrer.

*Held*, also, that the facts averred showed a failure of consideration for the release.

*Held*, also, that B. not having been served with process, and not having appeared to the action, no error was committed in instructing the jury that "they had nothing to consider as to B."

PRINCIPAL AND AGENT.—*Evidence.—Letters.*—Letters written by an agent in reference to the matter in controversy are legitimate evidence against his principal, in favor of the adverse party:

---

Wells *v.* Morrison.

---

INSTRUCTIONS.—*Statement of General Rules.*—*Exceptions.*—If a party desires that the exceptions to a general rule of law be stated in an instruction to a jury, he should, in general, ask the court so to do, but where the court states a legal proposition, and that the same is the rule " except in cases I shall hereafter enumerate," if the court afterwards undertakes to enumerate the exceptions, he must state them all, and for a failure so to do the judgment will be reversed.

PAYMENT.—*Smaller for Larger Sum Due.*—*Negotiable Instrument.*—In general, the payment of a smaller sum will not satisfy a larger, but a negotiable security for a smaller amount, given and accepted in satisfaction of a larger debt, will discharge it, and a check upon a bank, payable to bearer, is such a negotiable security.

From the Howard Circuit Court.

*N. R. Linsday* and *J. W. Kern*, for appellant.

*M. Bell*, *W. C. Purdum*, *H. Y. Morrison*, ——. *Morrison*, and *J. N. Sims*, for appellee.

BICKNELL, C. C.—The appellee brought this action against the appellant and one Adams, upon a written promise, of which the following is a copy.

" FRANKFORT, INDIANA, November 20th, 1876.

"Received of H. Y. Morrison five bonds of the Frankfort and Kokomo Railroad Company, of the value of one thousand dollars each, which we agree to pay for within one hundred days from date at 55 per cent. of their par value, or return the same within ten days thereafter, with accrued interest to date of payment, as per coupons attached.

(Signed) "ADAMS & WELLS."

The complaint averred that the defendants were partners, and made the promise by their firm name of Adams & Wells; that the par value of said bonds was $1,000 each; that they bore interest at 7 per cent., payable semi-annually; that they were never returned to plaintiff; that on December 4th, 1877, defendant Wells paid plaintiff on said promise $2,000; that there remained due thereon $1,500, for which judgment is demanded.

The defendant Adams was not served with process, and as to him the cause was continued for process.

The defendant Wells filed an answer in four paragraphs, to wit:

1st. The general denial.

2d. Payment before suit brought.

3d. That about December 4th, 1877, defendant and Adams owed more than they were able to pay, as the plaintiff well knew, and that plaintiff, in view of "the great probability of the entire insolvency of said Wells & Adams," accepted from Wells, by the hand of Calvin Cowgill, $2,000 in satisfaction of said promise so far as this defendant is concerned, and then and there gave this defendant a written release from said promise, of which the following is a copy:

" I hereby release and relinquish all claims against said Wells upon said obligation, this release being made for the purpose of discharging him from any further liability to me, on account of said contract or the bonds named herein." Wherefore, etc.

4th. That on December 4th, 1877, Calvin Cowgill, one of the creditors of this defendant, paid the plaintiff $2,000, which he agreed to accept in full satisfaction of the promise sued on, as shown by the following written receipt and release, to wit:

"WABASH, IND., December 4th, 1877.

" In consideration of $2,000 this day paid me by A. G. Wells, upon the obligation, a true copy of which is as follows: "

Then follows a copy of the promise sued on, with an endorsement thereupon, to wit:

" I hereby certify that I, as agent of Adams & Wells, have received the above named bonds from H. Y. Morrison, and that they are numbered No. 46, 47, 154, 155 and 156, and that the last coupons detached matured January 1st, 1876. Dated November 20th, 1876. (Signed) C. COWGILL."

Then followed a copy of the same release pleaded in the third paragraph of the answer. The fourth paragraph further avers that said $2,000 was paid and accepted in satisfaction of the said liability of the defendant, the plaintiff knowing that said defendant was insolvent; that said defendant was

then insolvent; that said defendant was largely indebted to said Cowgill, and had delivered to him, as security for such indebtedness, certain railroad bonds, and among them nineteen railroad bonds of the par value of $1,000 each, secured by a mortgage of the Frankfort and Kokomo Railroad Company, which bonds said Cowgill, by consent of said defendant, had sold for $4,800, to be applied on said indebtedness, and that before the application thereof to said indebtedness, said Cowgill had proposed to the plaintiff that if he would accept the same in full satisfaction of the liability of the defendant upon the obligation sued on, he, Cowgill, would pay him $2,000 thereof, and that the plaintiff, in view of the insolvency of the defendant and said Adams, accepted and received said $2,000, and in writing as aforesaid did discharge the defendant from all further liability on the promise sued on. Wherefore, etc.

The plaintiff demurred to each of said third and fourth paragraphs of answer. Said demurrers were overruled.

The plaintiff replied in six paragraphs, to wit:

1st. A general denial of the second, third and fourth paragraphs.

2d. Admitting the execution of said release, but averring that it was procured by the fraud and deceit of the defendant and his attorney, the said Calvin Cowgill, who falsely and fraudulently represented to the plaintiff, that one Comstock had agreed in writing with the defendant, that if he would pay plaintiff $2,000 on the promise sued on, he, Comstock, would pay the plaintiff the residue, and that if plaintiff would execute said release, defendant would aid plaintiff to enforce said contract of Comstock, and would deliver to plaintiff said contract or a copy of it; that plaintiff, relying on said false representations, executed said release; that said defendant never had any such contract with Comstock, and although often requested would not furnish said plaintiff such contract, nor a copy thereof, and would not aid plaintiff in enforcing it, and still refused so to do; that the said residue

is still unpaid, and that all the allegations of said third and fourth paragraphs of answer, not herein expressly admitted, are denied. Wherefore, etc.

3d. The third paragraph of reply does not differ substantially from the second paragraph.

4th. The fourth paragraph of reply avers that said release was without any consideration, and denies all the material allegations of the third and fourth paragraphs of answer, which are not therein expressly admitted or denied.

5th. The fifth paragraph of reply avers that defendant, on an application to set aside a default, had filed in court an affidavit that he had paid and caused to be paid to the plaintiff the entire amount due, whereby said defendant is estopped from averring that any other person paid said moneys.

6th. The sixth paragraph of reply pleads the same facts stated in the second and third paragraphs, as a failure of the consideration of said release. This paragraph also denies all the allegations of said third and fourth paragraphs of answer which are inconsistent with the allegations of the complaint and are not expressly admitted or denied.

Demurrers to the second, third and sixth paragraphs of the reply were overruled. A demurrer to the fifth paragraph of the reply was sustained.

The issues were tried by a jury, who returned a verdict for the plaintiff for $1,525.

A motion of the defendant for a new trial was overruled; judgment was rendered upon the verdict, and the defendant appealed.

He assigns errors as follows:

1. Overruling the demurrers to the second and third paragraphs of the reply.

2. Overruling the demurrer to the sixth paragraph of the reply.

3. Giving the jury instructions numbered from one to ten, inclusively.

4. Refusing to give the jury instructions asked for by the appellant, numbered from one to nine, inclusively.

5. Overruling the motion for a new trial.

The first specification in the assignment of errors being joint, it is not available, if either the second or third paragraph of the reply is good.

The second paragraph was good. The answer averred a release. The second paragraph of reply admitted the execution of the release, but alleged that it was obtained by the false and fraudulent representations of the defendant, that he had a written contract with one Comstock, who was bound thereby to pay the residue of the plaintiff's claim; that, in fact, there was no such contract; that defendant had agreed to deliver the same to the plaintiff and aid him in collecting from Comstock the residue of his claim, but had failed so to do. The plaintiff might well agree to take $2,000 and release the defendant in consideration of obtaining the existing written agreement of Comstock to pay the residue.

There was, therefore, no error in overruling the demurrer to the second and third paragraphs of the reply.

The second specification of error asserts the insufficiency of the sixth paragraph of reply, which stated substantially the same facts last mentioned as a failure of the consideration of the release. There was no error in overruling the demurrer to the sixth paragraph of reply. *Kingan* v. *Gibson*, 33 Ind. 53; *Arnold* v. *Cord*, 16 Ind. 177; *Wambaugh* v. *Bimer*, 25 Ind. 368; *Rice* v. *Loomis*, 28 Ind. 399.

Here the defendant's alleged representations were not in reference to something subsequently to be procured, but as to a valuable consideration which he stated he then had.

The third and fourth specifications are not proper in an assignment of errors; they belong to the motion for a new trial. *Harris* v. *Boone*, 69 Ind. 300.

As to the fifth specification in the assignment of errors, twelve reasons were assigned for a new trial. The first three allege that the verdict was not supported by and was contrary

to the evidence, and is contrary to law; but if the jury believed the testimony of the appellee, which they had a right to do, then these reasons amount to nothing. His testimony tended to sustain the verdict.

The fourth, fifth, sixth, seventh and eighth reasons for a new trial object to the admission in evidence of certain letters written by Calvin Cowgill to the plaintiff. But when these letters were written Mr. Cowgill was the agent of the defendant. The first of the letters expressly recognizes the indebtedness in controversy, states that it is nearly or quite due, and that the defendant desires an extension of time. All of the letters evidently relate to the indebtedness, as an existing obligation, and we think there was no error in admitting them. Whatever is said or written, by a party or his agent, in reference to the matter in controversy, is legitimate evidence for the other party.

The ninth reason for a new trial objects to the admission in evidence of a certain contract between the defendant and Comstock, by which it appeared that the defendant had lately transferred to Comstock a large amount of railroad securities, for which Comstock had agreed to pay him a large sum of money. The objection to this was that the contract was irrelevant and immaterial; but this contract and the preliminary evidence in relation thereto had a tendency to throw light upon the question whether the defendant was solvent or insolvent, which was one of the questions raised by the pleadings. There was no error in admitting this testimony.

The tenth reason for a new trial objects to the admission in evidence of a certain conversation between the plaintiff and Comstock. The plaintiff, without objection, had, on re-examination, testified as follows: "When I told Comstock what had occurred between Wells and me at Wabash, in regard to Wells giving me the benefit of that contract he held against Comstock to secure the payment of the balance of my bond contract, he said the contract did not bind him to pay it, and he was not going to do it." The witness then stated that

Comstock finally agreed to get him a conveyance of part of a certain lot No. 10, but instead of so doing had the entire lot conveyed to Emily G. Comstock, and that witness then asked him why he did it. The defendant objected to the witness answering that question because "it was not a proper re-examination, and was hearsay," but the court overruled the objection, and the witness testified: "He answered me, and said, 'Wells was owing him some, and he thought he had a right to take care of himself first, and that was what he had been doing.'" We think there was no substantial error in admitting this evidence. It tended to prove a part of the substance of the plaintiff's replies. It detailed a matter connected with the refusal by Comstock to comply with the plaintiff's demand. It was substantially a part of that refusal.

The eleventh reason for a new trial is that the court erred in giving the jury instructions from one to ten inclusive, and in giving each of said instructions.

These instructions are contained in a bill of exceptions, which states that, after the close of the argument, the court, of its own motion, gave the jury instructions from one to ten inclusive, which were in these words, to wit:

Upon this statement the instructions given in the bill of exceptions were all the instructions given by the court of its own motion:

"1. This suit is brought by the plaintiff to recover an amount of money upon a written contract alleged to have been executed by the defendants Allen G. Wells and Coe Adams, a copy of which is set forth in the complaint. There having been no service as to the defendant Adams, the cause is continued as to him; you, therefore, have nothing to consider as to him. The defendant Wells, however, appears and answers the complaint in several different paragraphs, the first of which is a general denial, the effect of which is to impose upon the plaintiff the burthen of proving, by a preponderance of the evidence, all the material allegations of his complaint."

The appellant claims that the court ought not to have told

Wells v. Morrison.

the jury that they "had nothing to consider as to Adams," but the substance of it is that although the jury had to determine the preponderance of the evidence as to the issues between the plaintiff and Wells, they had nothing to consider as to Adams. This was right. The testimony might affect the plaintiff and Wells, but could not be considered as to Adams, because he was, practically, out of the case.

" 2. The material allegations necessary for the plaintiff to prove, to enable him to recover in the first instance, and under this issue alone, are, first, the introduction of the written instrument sued on, the delivery of the bonds mentioned in the written instrument by the plaintiff to the defendants, the failure of the defendants to return the same, their par value and the rate of interest."

The objection made to this is that it assumes the existence of the written instrument, and that the bonds had some par value. There is nothing in these objections, the general denial being pleaded without oath. The execution of the writing sued on was admitted, but its introduction in evidence was necessary. The court told the jury, in substance, that, under this issue, the written instrument sued on must be introduced in evidence, and that it must be shown what was the par value of the bonds. Here was nothing unwarrantably assumed, and nothing likely to mislead the jury.

" 3. The defendant, in his second paragraph of answer, admits the execution of the written contract sued on, but says that before the commencement of this action the defendant Wells fully paid and satisfied said claim. This being denied by the plaintiff, the burthen of proving this issue by a preponderance of the evidence is upon the defendant. Under an answer of full payment a partial payment may be proved and allowed. A payment is the fulfilment of a promise, or the performance of an agreement; it may be a full payment or it may be a partial payment. And should you believe from the evidence that the defendant paid the whole of the money due on said contract, then your finding should be for the defend-

ant; but if you should believe from the evidence that the defendant only paid a part of the amount due, then your finding should be for the plaintiff in the amount of the principal and interest due the plaintiff and remaining unpaid, unless you should believe from the evidence that the defendant has made out some other and different one of his defences."

This instruction stated the general rule correctly in reference to the issue arising upon a plea of payment, but told the jury that such rule would not apply to other defences.

The appellant objects to it, that it does not state certain exceptions to such general rule, and, therefore, does not contain a full statement of the law applicable to such a plea; but where, as in this case, an instruction stated the general rule correctly, if the appellant thought it was not full enough, and desired exceptions to be stated, he ought to have asked for them, and taken care, if they were refused, that the record was properly made, so that under the rules of this court the refusal could be considered. *Adams* v. *Stringer*, 78 Ind. 175; *Hatton* v. *Jones*, 78 Ind. 466; *Mobley* v. *State, ex rel.*, 83 Ind. 92; *Bishop* v. *Redmond*, 83 Ind. 157.

"4. The defendant, for a third and further defence, avers that the defendants Adams & Wells were largely and heavily indebted, and in failing and insolvent circumstances, unable to meet and pay their debts; that in view of such insolvency and inability to pay said debts, Morrison received in full discharge of his debt $2,000; and in the fourth paragraph of answer the defendant avers the same facts as to their insolvency and inability to pay their debts, and says that one Calvin Cowgill, paid to said plaintiff $2,000 out of funds under his control, and held by him as his security, in consideration of which payment by said Cowgill, the plaintiff agreed to release the defendant from all further liabilities, and that in consideration of such payment, as aforesaid, the plaintiff executed his written release, an alleged copy of which is filed with said third and fourth paragraphs of answer. These paragraphs of answer are denied by the plain-

tiff, thereby casting the burthen of proof of these issues upon the defendant."

The substance of this is, that the plaintiff's denial of the third and fourth paragraphs of the answer put the burden of proving those answers upon the defendant. The general tenor of the answer was sufficiently stated.

" 5. A payment by a debtor of a less amount than is due the creditor can not operate as a satisfaction of the debt, nor does it constitute a sufficient consideration to base a valid release upon, except in cases I shall hereafter enumerate. The release in this case is a written contract upon the part of the plaintiff, by which he agrees to discharge the defendant Wells from all further liability on Adams & Wells' indebtedness to him, and in order that such release shall bind the plaintiff Morrison, it must have been based upon a valuable consideration; and the payment of only a part of the amount due him by Wells would not constitute a consideration for the written release, and such written release is not binding upon him unless there is some other or different consideration for the same.

" 6. If, however, Adams & Wells were in insolvent circumstances at the time, being unable to pay their debts, and the said Morrison knew this fact, and for the purpose of securing a portion of the debt, sharing in common a loss with the other creditors, received and accepted $2,000 in full satisfaction of his debt, and said $2,000 constituted and was the only consideration for the execution of said release, then and in that case he would be bound thereby and could not recover in this case.

" 7. If you find also from the evidence that the defendant Wells had placed in the hands of Cowgill certain railroad bonds, to indemnify him against loss on account of being Wells' security, and that Cowgill had, with Wells' consent, converted a portion of said bonds into cash for the purpose of paying the same on the debts for which he was so liable as said Wells' security, and had said money in his own hands and

under his control, and that while he, Cowgill, so controlled said money, he agreed with the plaintiff, Morrison, that if he would release the defendant Wells from all liability on account of the obligation sued on, he would pay him $2,000 of the money he so controlled and held, and that said Morrison had knowledge, at the time he accepted the same, that the said Cowgill so held said money as his security, and that said Cowgill did pay the plaintiff said sum of money in pursuance of said contract, and that Morrison so accepted and received the same, then your finding should be for the defendant, unless you should believe from the evidence that said release was procured by the fraud and deceit of said defendant Wells."

These last three instructions may be considered together. In the fifth instruction, the court tells the jury the general rule that payment of a less sum will not satisfy a greater sum already due, "except in the cases I shall hereafter enumerate." After making this statement, the court was bound to enumerate all the exceptions to which the evidence was applicable; this the court failed to do. It appeared in evidence that the $2,000 was paid by a check of which the following is a copy:

"$2,000.        WABASH, IND., Dec. 4, 1877.
"First National Bank:
"Pay to H. Y. Morrison, or bearer, two thousand dollars in currency.        (Signed)        C. COWGILL."

Such a check must be viewed as an inland bill of exchange. Glenn v. Noble, 1 Blackf. 104. In its quality of negotiability under the law merchant, it exactly resembles a bill of exchange. Byles Bills, 13; Chitty Bills, 10th Am. ed., p. 511. It is one of the exceptions to the general rule laid down by the court in its instruction No. 5, that where the less sum is paid by a check, or other instrument negotiable by the law merchant, it may operate as a discharge of the entire indebtedness. 2 Parsons Contracts, 6th ed., p. 619; Sibree v. Tripp, 15 M. & W. 23; Goddard v. O'Brien, L. R. 9 Q. B. 37. So, in Fensler v. Prather, 43 Ind. 119, 122, this court said: "A negotiable se-

curity for a smaller amount given and accepted in satisfaction of a larger debt will operate effectually in discharge of it;" the court having undertaken to state the general rule and the exceptions, and having omitted a very important exception to which the evidence was applicable. In this respect the charge was erroneous. . It must have led the jury to believe that there were no exceptions to the general rule stated, except those afterwards mentioned by the court in instructions Nos. 6 and 7.

The remaining instructions given by the court, Nos. 8, 9 and 10, contain nothing in relation to any exceptions to the general rule stated in instruction No. 5. They relate exclusively to other matters. If the appellant desired any further statement to be added to instruction No. 9, to make it more complete, he should have asked for it. We find no substantial error in instructions Nos. 8, 9 and 10. For the error aforesaid in the instructions of the court, the judgment must be reversed. It is therefore unnecessary to consider the instructions refused by the court.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things reversed, at the costs of the appellee, and this cause is remanded for a new trial.

Filed June 29, 1883.

## ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The petition claims that the court below, after stating the rule that a larger sum is not discharged by the payment of a smaller sum, except in certain cases which the court would enumerate, did not err in failing to mention one of such exceptions, to wit: That where the payment, made and accepted in satisfaction, is by a negotiable check, it will discharge the larger sum.

Upon this proposition, the authorities cited in the principal opinion, show that the court below did err.

The appellee argues the case as if the plea of payment stood

alone, but the fourth defence expressly avers that the money was paid and accepted in full satisfaction of the entire promise.

A verdict, in accordance with the weight of the evidence and with justice, will not be set aside because of error in the instructions, but here the error of the court embraced the controlling feature of the case. It undoubtedly misled the jury, and it was followed by a verdict which, we can not say, was in accordance with the weight of the testimony, nor with justice.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.

Filed October 11, 1883.