## STATE OF INDIANA, EX REL. REMO, *v.* GOLD-
## ING ET AL.

[No. 3,907.    Filed January 17, 1902.]

INTOXICATING LIQUORS.—*Action on Bond.*—*Damages.*—*Joint License.*— Defendants in an action on a bond conditioned that the licensees shall keep an orderly house and pay all fines and costs that might be assessed against them for any violation of the provisions of the act under which the license was procured, and pay all judgments for civil damages growing out of the unlawful sales, etc., cannot escape liability in a civil action thereon for personal injuries received in their place of business by an assault therein, and for money taken from relator while therein, on the ground that the bond was void because the license to sell intoxicating liquors was void because issued to defendants jointly.

From Shelby Circuit Court; *Douglas Morris*, Judge.

Action by State on the relation of Frank B. Remo against James E. Golding and others for damages on a bond given for sale of intoxicating liquors. From a judgment for defendants on demurrer to complaint, relator appeals. *Reversed.*

*G. H. Meiks, C. Hack, T. B. Adams* and *I. Carter*, for appellant.

*K. M. Hord, E. K. Adams, A. F. Wray, T. H. Campbell* and *O. J. Glessner*, for appellees.

WILEY, J.—Appellees Golding and Bogeman were licensed retailers of liquors, and were engaged in the saloon business under a license issued to them jointly, and executed jointly the bond required by statute for retail liquor dealers, with appellees Rehme and Deprez as sureties. Appellant brought this action against all the appellees upon that bond, to recover damages for alleged injuries received in the place of business of Golding and Bogeman, by being assaulted therein, and for money of which he charges he was robbed while therein. All the appellees demurred separately to the complaint, which demurrers were sustained.

State, *ex rel.*, *v.* Golding.

The appellant refused to plead over and judgment was rendered against him for the costs. Sustaining these demurrers are assigned as errors.

The complaint was in three paragraphs and for the purpose of determining its sufficiency the following abstract will suffice: The first paragraph avers the issuing to appellees Golding and Bogeman, the license; the execution and the approval of the bond, and that under such license, they commenced and continued the sale of intoxicating liquors at retail in the room designated and described in the license. The breaches of the bond alleged in this paragraph of complaint are that prior to and especially on April 24, 1899, appellees Golding and Bogeman kept said house, and conducted said business in a disorderly and unlawful manner, in that they permitted and suffered, "divers persons of bad character and reputation to congregate in and about said building, in said room and adjoining rooms, and gamble, and quarrel, fight, make unusual noises and do other things too indecent to be stated." That on the said 24th day of April, 1899, the relator was lawfully in said place of business, and that by reason of the disorderly and unlawful manner in which the business was conducted, he was unlawfully and with force and violence assaulted, injured, and robbed, and by reason of such assault, he became sick and suffered great bodily harm. The second breach of the bond in the first paragraph, is that the relator was assaulted by said Golding and Bogeman. The third breach of the bond alleged in the first paragraph, is that the relator was assaulted by a servant and employe of Golding and Bogeman.

The averments of the second paragraph are like the first, except that it is charged that Bogeman "did illegally, unlawfully, intentionally and knowingly sell and deliver to the said Remo adulterated and poisoned intoxicating liquor, by the drinking of which the said Remo became sick in body and mind to the extent that he was unable to protect himself from being robbed and defrauded out of a large sum

of money." It is also averred in this paragraph that the illegal sale of the poisoned liquor was made by servants and employes of Golding and Bogeman.

The third paragraph of the amended complaint contains the substantial averments of the first, and in addition thereto charges that Golding and Bogeman "illegally kept open and maintained, in connection with the said business, a gambling room adjoining and adjacent to said business room," and that they allowed divers persons to gather and congregate in said gambling room to gamble, quarrel, and fight, and that they did carry and have their servants and employes carry intoxicating liquors from their business room to said gambling room, and there illegally and unlawfully, sell and receive pay for the same. That on the said named day the relator, while in said gambling room drank of the liquor sold as aforesaid, by reason of which he became unable to protect himself from being robbed and defrauded out of a large sum of money, and that he became very sick and suffered great bodily pain and anguish of mind. A copy of the bond is filed with the complaint. The conditions of the bond are that the licensees shall keep an orderly and peaceable house, and pay all fines and costs that might be assessed against them for any violation of the provisions of the act under which the license was procured, and pay all judgments for civil damages growing out of the unlawful sales, etc. From the complaint it is shown that Golding and Bogeman made application to the board of commissioners for a license to sell intoxicating liquors at retail, and that such license was granted to them jointly. The bond sued on is in the form and character as that required by statute.

It is urged by counsel for appellees that the act of the commissioners in granting a joint license to Golding and Bogeman was void, and hence the bond sued upon was also void. We gather from the briefs that it was upon this theory the several demurrers were sustained to the complaint.

This court held in the case of *Spaulding* v. *Nathan*, 21 Ind. App. 122, that the statute regulating the issuing of a license to sell intoxicating liquors at retail, did not make any provision for issuing such license to any one other than a "male person over the age of twenty-one years," and that by the statute itself two or more persons are prohibited from obtaining a license jointly or as partners. We still adhere to the construction there given to the statute. If it logically or necessarily follows that because there is no warrant in the statute authorizing the issuing of a joint license, as in this case, that the bond given in pursuance to the statute is also void, then there can be no recovery upon it. It is urged by counsel for the appellees that the relator was bound to know the law, and hence knew that the license under which Golding and Bogeman were carrying on business was an illegal license and that the bond was therefore void. True, a party is presumed to know the law, but in our judgment it is not a necessary sequence, that, because the license was void, the bond was void. The bond was just such a bond as is provided for by the statute. By the execution and the approval of the bond, the principals therein entered upon the business of retailing liquors to their profit. Without the bond they could not have engaged in this business. To declare that after they had reaped the benefits which alone could have arisen by virtue of the bond, that they were not amenable to its conditions for a violation of any of its terms because the license had been issued to them jointly as partners, and hence the bond was void for that reason, would be to declare a rule repugnant to law, to every sense of justice and good morals. They acted under the bond as though it was valid and binding, and every sense of justice demands that for any violation of its conditions they should atone for resulting injuries.

Counsel have not cited us to any authority directly in point, and we have been unable to find any, but it is a plain and just principle of law that recitals in a bond ordinarily

bind both principal and sureties. Thus if a guardian's bond recites that a guardian has been appointed, and the bond provides for the faithful performance of his duties and that he will account for all funds of his ward that may come into his hands, neither he nor his sureties, for his malfeasance, can successfully defend on the ground that he was not in fact appointed such guardian. The law will not countenance such fast and loose play as that. The principle of estoppel applies.

In the case of *Gray* v. *State ex rel.*, 78 Ind. 68, 41 Am. Rep. 545, it was held that sureties upon a guardian's bond, executed by them and their principal to obtain an order to sell real estate of his wards, after he had sold the real estate and received the money, were estopped to deny that their principal had in fact been appointed guardian of such ward. *Shroyer* v. *Richmond*, 16 Ohio St. 455, was a suit upon a guardian's bond. The sureties insisted that the appointment was illegal. The court held that they were estopped from asserting that such appointment was illegal, and in the course of the opinion said: "By executing this bond, they obtained for their principal the possession and control of his ward's property, and can not now be permitted to escape liability to account therefor, by denying the recitals of their own bond. They are estopped to do so."

The case of *Fridge* v. *State*, 3 Gill & J. 103, 20 Am. Dec. 463, was a suit on a guardian's bond, in which the surety urged the invalidity of his principal's appointment as a defense, and it was held he was estopped. The court said: "Owen Dorsey having given his bond, in which he is stated to be the guardian of E. A. K., and having obtained possession of her property, it would not in a suit against him, have lain in his mouth to deny that he was guardian, in the very face of the recital in his bond, or to set up any supposed irregularity in obtaining the appointment; the recital in the bond being evidence as against him, that he was guardian. Nor does it lie in the mouth of his surety, against whom the

recital is equally evidence." See also *Norton* v. *Miller*, 25 Ark. 108.

A case strongly in point is that of *Iredell* v. *Barbee*, 9 Ired. 250, that was an action on the bond of an insane person. The law did not authorize the appointment unless it had been found by a jury that such person was a lunatic or an idiot, and as it was not so found, it was insisted that the bond was void. It was held that though the court did not have power to appoint the guardian, in the absence of such a finding, and authorize him to take her estate into his possession, yet under the recitals of the bond, and after he had reduced the estate of his ward to possession and squandered it, responsibility could not be escaped upon the ground of an illegal or void appointment.

In the case of *Collins* v. *Mitchell*, 5 Fla. 364, the action was on a sheriff's bond. The sureties defended on the ground that at the time of the execution of the bond, the principal was in fact dead, and that his name was signed to the bond by another. It was held that the sureties were estopped to deny that their principal was sheriff, and that they were bound by the recitals of their bond. This case it seems to us goes to great length, but it shows the rigidity with which courts will enforce official obligations, where rights of third parties are infringed, when such official obligations are for the protection of such rights.

A party, except in the clearest case, should not be allowed to deny the plain recitals of a solemn obligation, into which he has entered, when to do so he defeats the rights of a third person, for whose benefit the obligation was made, and who has sustained injury by reason thereof. The rule declared in the cases cited is a wholesome one, and in our judgment is applicable to the facts pleaded. Appellees Golding and Bogeman got all the benefit from the license and bond that could possibly accrue to them if the license had been legal in every respect. Under such a condition it is obnoxious to every sense of justice that they and their

sureties should be released from liability for a breach of the bond, and thus deny its plain and strict recitals.

The bond as we have seen is conditioned that the principals should keep an orderly and peaceable house; pay all fines and costs that might be assessed against them for the violation of the liquor law, and pay all judgments for civil damages growing out of unlawful sales, etc. The complaint charges that Golding and Bogeman did keep a disorderly house, and states the facts upon which such charge rests. It also charges illegal sales of liquor, in that they sold adulterated liquors, to the relator, by which he was rendered helpless, and that injury resulted therefrom.

It is made a misdemeanor, by statute, to sell adulterated liquors (§2167 Burns 1901). It follows therefore that any sale of adulterated liquors is unlawful.

While there are facts alleged in the complaint that are not by any means creditable to the relator, we are inclined to the view that they are sufficient to constitute a cause of action.

The judgment is reversed, with directions to the court below to overrule the demurrers to the complaint.