## WOLCOTT v. HAYES ET AL.

[No. 6,681. Filed April 27, 1909.]

1. **PRINCIPAL AND AGENT.**—*Authority.*—*Termination of.*—In a continuous transaction or negotiation the authority of an agent does not expire by the performance of a single act, however important. p. 584.

2. **VENDOR AND PURCHASER.**—*Agents.*—*Shortage in Acreage.*—*"About."*—Where a purchaser, by his agent, contracted with a vendor, for the conveyance of "about" 850 acres of land, the vendor refusing to warrant the acreage, such purchaser is bound thereby and cannot recover for a shortage in the number of acres conveyed. p. 584.

3. **VENDOR AND PURCHASER.**—*Shortage in Acreage.*—*Question for Jury.*—Whether a certain tract of land contained the number of acres specified in the deed and contract of sale is a question for the jury. p. 584.

4. **TRIAL.**—*Instructions.*—*Recovery Upon "One or Both Paragraphs" of Complaint.*—An instruction that "to entitle plaintiff to recover * * * he must establish * * * the material allegations of one or both paragraphs of the complaint, * * * and, if he has failed so to do, then your verdict should be for the defendants," is not erroneous. *Manion* v. *Lake Erie, etc., R. Co.*, 40 Ind. App. 569, distinguished. p. 584.

5. **APPEAL.**—*Right Result.*—The judgment of the trial court will not be disturbed, where the right result was reached. p. 585.

From Greene Circuit Court; *Orion B. Harris*, Judge.

Action by Eben H. Wolcott against John B. Hayes, Sr., and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Haslings, Allen & Haslings* and *Cullop & Shaw*, for appellant.

*A. J. Padgett, Cyrus E. Davis* and *Gardiner, Tharp & Gardiner*, for appellees.

COMSTOCK, P. J.—Appellant sued appellees to recover the purchase money on account of an alleged shortage in the number of acres conveyed by defendants to the plaintiff on a contract of sale of real estate. The complaint is in two paragraphs. The first was filed September 22, 1905, in the

Daviess Circuit Court, and in which it is averred "that plaintiff made the purchase and paid the price of the land, because of the fact that said defendants, acting upon mistaken information and without fraudulent intent, stated and represented to the plaintiff and the other grantees, in said deed mentioned, that the total acreage of said real estate was 850, and that said plaintiff and the other grantees, in said deed mentioned, in good faith and without any contrary knowledge relied upon and believed their said statements and representations as well as the recitals in said deed as to the total acreage," etc. Issues were joined on this paragraph of complaint, and a trial in the Daviess Circuit Court in January, 1906, resulted in a verdict for defendants. A new trial was granted in April, 1906, and the venue changed to the Greene Circuit Court. On September 4, 1906, the plaintiff filed in the Greene Circuit Court his second paragraph of complaint, which is based on the written contract of sale. The other parties to the contract, viz., Smith, Gilbert and Blake, are not made parties plaintiff or defendant. Plaintiff avers in this paragraph that the contract provided that he and the other purchasers were to pay $40 an acre for the land, but that by mutual agreement the contract was so modified that the purchase price was changed from $40 to $36 per acre. Defendants answered this paragraph of complaint by general denial, and also filed a counterclaim which plaintiff answered by general denial. A trial resulted in a verdict and judgment in favor of defendants.

The only error assigned is the overruling of appellant's motion for a new trial.

The following facts are shown by the evidence: On October 31, 1901, appellee John B. Hayes, Sr., and his children, owned a large tract of land situated in Knox county, Indiana, and estimated to contain 850 acres. About twenty days prior to that time appellee Hayes, Sr., acting for himself and his children, sold to George A. Bright, a real estate

broker, an option on this land, giving to Bright the option of purchasing the land within ten days at $36 per acre. Bright carred his option to the town of Wolcott, Indiana, and informed appellant and his partner, a man by the name of Gipson, of the fact that he had the option. Wolcott and Gipson were real estate brokers at the town of Wolcott. They, together with Bright, arranged among themselves to effect a sale of the land at $40 an acre, at a profit of $4 an acre, and divide the profits. These brokers got parties by the name of Blake, Smith and Gilbert interested in the land as prospective purchasers. They finally concluded an arrangement among themselves, by which Wolcott and Blake were to take 450 acres of the land at $36 an acre, and Smith and Gilbert were to take 400 acres at $40 an acre. Before these arrangements were completed the option was about to expire, and Bright got an extension for ten days. Appellees were not acquainted with either Gipson, Wolcott, Blake, Smith or Gilbert. They were brought into the deal by Bright, who wanted them to take the land on his option. On Saturday before October 31, 1901, Gipson, Smith, Gilbert and another party came to Washington, Indiana, to look at the farm, and Bright took them to see it. Hayes was not along. Bright and party returned to Washington from the farm about dark, and Hayes met them at Bright's office about 9 o'clock that same night. When Hayes got to the office, Bright informed him that they were there to close the deal on the option he held. Gipson asked Hayes what he had to show for the description and number of acres in the farm. He told them he had a tax receipt, but when he produced the tax receipt it gave the number of acres, but did not give sufficient description, and he then went to his home and got an abstract and took it to Bright's office. Hayes was asked about having the land surveyed for the purpose of ascertaining the number of acres, and he said he was willing to survey the land, provided the purchasers would agree to pay for any overplus, and if it did not come

up to the estimated number of acres he would make a like reduction, or they could take it at the estimated number of acres, or they could let it go. After some further talk, they informed Hayes that they would take the land at what the abstract called for, and risk it. Then Gipson commenced to write a contract, and Hayes said that he need not write it, that he would not sign any paper unless he had some lawyer to look it over for him, and the parties said they would have to go home and could not wait. Hayes told them to go home, for he would not sign any contract until he had it examined by a lawyer. The meeting then broke up without the execution of any contract. The next morning (Sunday), as Hayes was on his way to church he met Gipson, who informed him that he had stayed over to fix the contract, and Hayes said, "All right." Hayes then employed an attorney to represent him in the negotiations, and informed him that the understanding was that he was not to be bound by any certain number of acres, that the purchasers were to risk the number of acres, and he wanted it fixed that way. Hayes and his attorney, then met Gipson, who said to Hayes: "I suppose you will warrant the title to 850 acres?" and Hayes said, in answer to that: "I will do nothing of the kind." Gipson said: "Why, are you afraid that the land will not hold out 850 acres?" Hayes answered that he had no information as to the quantity of land, except such as he got from his abstract, and that he would not warrant the title to any particular quantity of land unless it was first surveyed, and that if they wanted it surveyed the matter would have to be delayed until a surveyor could be taken out there and the land surveyed, and, if that was done, he wanted it understood that he was to be paid for the excess, in the event there should be an excess shown, and finally said that, if the deal was to be closed then, it would have to be closed on the basis of 850 acres, and the buyer take the chances on the farm's containing that quantity. Hayes and his attorney then went into Bright's

office, in the same building, and in a few minutes Gipson followed them and announced that he would take the land at 850 acres. The parties, Hayes, Bright and Gipson, shortly after the conversation, met at the law office of Hayes's attorney, for the purpose of having the contract drawn up, and when they got ready to reduce the contract to writing Bright said: "Hayes has said all the time that he would not sign a contract for a certain number of acres without surveying that land, and we do not want to survey the land now, and you will have to use something in there—what will it be, 'more or less,' or not?" and Hayes's attorney said: "There has been a ruling of the court that the words 'more or less' do not signify anything in a deed. Suppose we use the word 'about.'" Which word was used expressly for the purpose of not binding Hayes to any particular quantity of land. The contract was drawn in duplicate, and the number of acres stated was "about" 850 acres. Hayes signed the contract for hmself and his children, coäppellees, and it was carried or sent to Wolcott, Indiana, and signed by the other parties, Smith, Gilbert, Wolcott and Blake. Blake, under an arrangement between himself and the other purchasers, was to take one-half of 450 acres of the land. Blake then dropped out and Wolcott took his interest in the land. The contract provided that all of the purchasers, including appellant, should pay to the option holders $40 an acre for the land. Wolcott paid $36 an acre for forty-five eighty-fifths of the land, and Smith and Gilbert paid $40 an acre for forty eighty-fifths of the land, but the vendors received but $36 an acre for the entire tract. The difference between the $36 and $40 an acre went to Bright, Wolcott and Gipson as their profit on the deal. Sometime afterwards Smith and Gilbert sold their interest in the land to John C. Metsger for $45 an acre on the basis of 850 acres. A question as to the number of acres contained in the farm arose at a later date. There is a conflict upon the part of

witnesses who testify that there is a shortage and others who testify that there is no shortage.

It thus appears from the evidence that Hayes had sold to Bright an option to purchase the land in question, and had bound himself to make a conveyance to Bright or any other person named by him. Hayes had no direct dealing with Wolcott. Wolcott went into the deal with Bright and Gipson for the purpose of taking the land on Bright's option and sharing in the profits. Wolcott and Gipson were partners in the real estate brokerage business. They worked together in getting the other purchasers to take an interest in the land at an advanced price of $40 an acre, or $4 an acre over the option price. This was for the benefit of Wolcott, Gipson and Bright. Wolcott contracted to pay $40 per acre for the farm, the same as Smith and Gilbert, but he only paid $36 an acre.

Appellant does not deny that Gipson was his agent and acted for him in negotiating for the purchase of this land. He now claims that his agent had no authority to bind him in regard to any agreement as to the number of acres. His position is that his agent could contract for his benefit by modifying the contract from $40 to $36 an acre, but could not bind him by waiving any other advantage he might have. He asks the benefit of the modification of the contract from $40 to $36, but he never saw Hayes, and did not, in person, make any such modification. If any such modification was made, it was made by his agent Gipson. There is no proof that the contract was modified. At $40 an acre, Wolcott should have paid $18,000 for the 450 acres, while he only paid $16,200, or $1,800 less than the amount called for in the contract, which, under the contract, he would owe appellees.

If we concede that the lands fall short 81.10 acres, Wolcott would be entitled to a rebate for forty-five eighty-fifths of 81.10 acres, or 42.94 acres at $36 which would

amount to $1,545.84. The account would then stand on the basis of the contract as follows:

| | |
|---|---|
| 450 acres at $40 an acre.................. | $18,000.00 |
| Paid by Wolcott at $36 an acre............ | 16,200.00 |
| Balance due on contract price............. $ | 1,800.00 |
| Wolcott entitled to rebate on 42.94 acres at $36 per acre ......................... | 1,545.84 |
| Balance due appellees................... $ | 254.16 |

In a continuous transaction or negotiation the authority of an agent does not expire with the performance of one act, however important that act may be. *Pennsylvania Co.* v. *Nation* (1887), 111 Ind. 203; *United States Express Co.* v. *Rawson* (1886), 106 Ind. 215; *Wells* v. *Morrison* (1883), 91 Ind. 51; *Louisville, etc., R. Co.* v. *Henly* (1883), 88 Ind. 535; *Kirkstall Brewery Co.* v. *Furness R. Co.* (1874), L. R. 9 Q. B. 468; *Cleveland, etc., R. Co.* v. *Closser* (1890), 126 Ind. 348, 9 L. R. A. 754, 22 Am. St. 593.

The facts show that Gipson was the agent of Wolcott throughout the transaction. The word "about" was used because Hayes would not bind himself as to any definite number of acres. There is a conflict in the evidence as to the number of acres. It was for the jury to find what, if any, was the shortage. There was ample evidence to warrant the finding that no shortage existed.

The giving of instruction one, at the request of appellees, is objected to, because, "under it, a failure to prove the material averments of the first paragraph of complaint requires a verdict against the plaintiff on the second paragraph, and *vice versa.*" Citing, *Manion* v. *Lake Erie, etc., R. Co.* (1907), 40 Ind. App. 569. Said instruction reads as follows: "In order to entitle plaintiff to recover in this action he must establish by a fair preponderance of the evidence the truth of the material allega-

tions of one or both paragraphs of the complaint upon the theory set forth therein, and, if he has failed so to do, then your verdict should be for the defendants.'' An instruction in the case last cited reads as follows: ''If the plaintiff has failed to prove the material averments of some one or more paragraphs of complaint by a fair preponderance of the evidence in this cause, then you should find for the defendants.'' The two instructions are distinguishable. The instruction in question told the jury that the burden was on the plaintiff to prove the material averments of at least one paragraph. In the case cited the jury was told that if the plaintiff failed to prove the material averments of one or more paragraphs—that is, if he proved the averments of the second paragraph and failed to prove the other—he could not recover.

Exceptions were taken to the action of the court in giving and refusing to give certain other instructions to the jury. Upon a careful consideration of the questions thus raised, in view of the undisputed facts, we find no reversible error. An examination of the whole record leads to the conclusion that the merits of the case were fairly tried and a correct result reached.

Judgment affirmed.