## LAWLOR ET AL. v. STATE OF INDIANA, EX REL. SHATTO.

[No. 7,657. ·Filed October 18, 1912. Rehearing denied January 30, 1913. Transfer denied March 12, 1913.]

1. INTOXICATING LIQUORS.—*Unlawful Sales.*—*Action for Damages.* —*Evidence.*—*Sufficiency.*—In an action on a liquor dealer's bond for injury to means of support by the unlawful sale of liquor, evidence, though conflicting, which showed that the husband and father of the plaintiffs had been drinking intoxicants before going to the saloon, that he remained in the saloon about four hours, playing cards and drinking at intervals, that he was so drunk that he staggered and fell to the ground when he was put out of the saloon, that as he walked toward the railroad he staggered, and that shortly afterwards his mangled body was found on the railroad tracks, was sufficient to warrant the jury in finding that his death resulted as a consequence of his intoxication. p. 27.

2. INTOXICATING LIQUORS.—*Unlawful Sales.*—*Action for Damages.* —*Principal and Agent.*—*Sale by Agent.*—*Evidence.*—In an action on a liquor dealer's bond to recover for injury to means of support by the unlawful sale of liquor, evidence showing that a license was issued to the dealer to conduct a saloon where the liquor was sold, that a saloon was opened and conducted at that place, and that the sale complained of was made by a person in charge within the term covered by the license, is sufficient *prima facie* to show that the place was conducted under the license granted to such dealer, and that the person in charge was his agent or employe. p. 27.

3. INTOXICATING LIQUORS.—*Unlawful Sales.*—*Action for Damages.*— *Evidence.*—*Prima Facie Case.*—*Rebuttal.*—Where,· in an action on a liquor dealer's bond for injury to means of support by the unlawful sale of liquor, the evidence showed *prima facie* that the place where liquor was sold was conducted under the license issued to the defendant dealer and that the person in charge was his agent or employe, the question of whether a bill of sale introduced in evidence, and the testimony of the person in charge that on the date shown by such bill of sale he had purchased the saloon and had since conducted it on his own accord and that immediately after such purchase the defendant dealer removed his license and left the State, but which was in part discredited by the testimony of another witness showing that the bill of sale was not executed on the date which it bore, was suf-

ficient to rebut the *prima facie* case made by plaintiffs, was for the jury, and it cannot be held on appeal that its finding for plaintiffs on such question is not warranted by the evidence. pp. 28, 29, 30.

4. WITNESSES.—*Credibility.*—*False Testimony.*—*Effect.*—Where a jury believes that a witness testified wilfully to a falsehood as to certain matters, it has a right to disregard his entire testimony. p. 29.

5. WITNESSES.—*Credibility.*—*Weight of Testimony.*—The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given to their testimony. p. 29.

6. APPEAL.—*Review.*—*Evidence.*—*Verdict.*—A verdict will not be set aside on appeal for want of evidence on any point on which the evidence is conflicting. p. 29.

7. INTOXICATING LIQUORS.—*Rights of Dealer.*—*Sale of Stock and Fixtures.*—The owner of a saloon may lawfully sell the stock and fixtures and quit the business. p. 29.

8. INTOXICATING LIQUORS.—*Rights of Dealer.*—*Transfer of License.*—Prior to the act of 1911 (Acts 1911 p. 244) the statutes provided no means by which the holder of a license to conduct a saloon could transfer that license to another. p. 29.

9. INTOXICATING LIQUORS.—*Removal of Dealer.*—*Forfeiture of License.*—Removal from the State by one holding a retail liquor dealer's license works a forfeiture thereof, and it will thereafter afford no protection to a person who sells intoxicating liquors assuming to act as the agent of the owner of such license. p. 30.

10. INTOXICATING LIQUORS.—*Forfeiture of License.*—*Liability of Surety on Dealer's Bond.*—The forfeiture of a retail liquor dealer's license does not operate to relieve such dealer or his bondsmen from liability for damages resulting from an unlawful sale thereafter made under color of such license. p. 30.

11. INTOXICATING LIQUORS.—*Unlawful Sales.*—*Action for Damages.*—*Instructions.*—In an action on a liquor dealer's bond for damages growing out of the unlawful sale of liquor, an instruction that if the jury finds from the evidence that by reason of the acts of the defendants themselves, or of any one of them, by and with the knowledge and consent of the others expressed or implied, the license issued to the defendant dealer became inoperative and void, but that the unlawful sale, if any, was made by a person in charge of the saloon under color of such void license, defendants are estopped from asserting the invalidity of such license as a defense, was erroneous, since it warranted the jury in concluding that defendants were estopped to assert the invalidity of the license, without finding as a fact that the person in charge was acting as the agent of the defendant dealer, or that such defendant and his bondsmen had any knowledge

that the business was being conducted under color of the license granted to him. pp. 30, 32, 34.

12. INTOXICATING LIQUORS.—*Sale of Business.—Sales Under Color of License.*—Where the holder of a saloon license sells his stock and fixtures to another who takes possession and operates the saloon on his own account at the place described in the license of the seller, such acts alone do not amount to conducting the business under color of the license of the seller, so as to render him and his bondsmen liable for damages resulting from illegal sales made by the purchaser. p. 32.

13. APPEAL.—*Review.—Instructions.—Refusal.*—Where requested instructions on a proposition correctly stated the law, and were not fully and fairly covered by instructions given, their refusal was error. p. 33.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Action by the State of Indiana, on the relation of Sadie Shatto and others, against Thomas Lawlor and others. From a judgment for relators, the defendants appeal. *Reversed.*

*Joseph E. Bell* and *Shirts & Fertig,* for appellants.

*Pond & Patter, U. C. Stover* and *McCullough & Welborn,* for appellees.

LAIRY, J.—This action was brought in the Marion Circuit Court on a retail liquor license bond, executed by appellant Thomas Lawlor, as principal, and appellants Terre Haute Brewing Company and Maurice Donnelly, as sureties. The suit was instituted by the widow and minor children of Jesse Shatto, deceased, to recover damages for the loss of their means of support. It was alleged that decedent was killed by a switch engine while he was intoxicated, and that such intoxication was produced by liquor illegally sold to him by Lawlor or his agents.

The complaint was in one paragraph, and appellants answered in general denial. On motion for a change of venue the cause was transferred to the Hancock Circuit Court, where a trial was had before a jury, a verdict returned, and judgment rendered in favor of appellees in the sum of $1,500.

Appellants' motion for a new trial was overruled by the trial court, and this ruling is the only error assigned on appeal.

Lawlor *v.* State, ex rel.—53 Ind. App. 24.

Appellants first contend that there is no evidence from which the jury was justified in finding that the death of Jesse Shatto resulted from the unlawful sales of intoxicating liquors made in the saloon described in the complaint. To this contention we cannot agree. The evidence shows that Jesse Shatto, in company with a man named Curtis, went to a saloon on the northwest corner of Martindale Avenue and Nineteenth Street about 4.30 o'clock on the afternoon on which he was killed. According to the testimony of Curtis, they both had been drinking intoxicants before they went to this saloon, and, from the conduct of Shatto as described by this witness, the jury may have properly found that he was somewhat intoxicated at that time. They remained there, as shown by the evidence, playing cards and drinking at intervals, until about 8:30 o'clock, when the wife of Curtis came to the saloon and took her husband away. She and her daughter who was with her testified that both Shatto and Curtis were so drunk at that time that they staggered and fell to the ground after they were put out of the saloon, and that the last they saw of Shatto, he was walking or staggering west on Nineteenth Street toward the railroad. About 9:30 o'clock his dead body was found on the tracks of the Lake Erie and Western Railway Company near his home, by the crew of a switch engine. The yardmaster who was with this crew testified that Shatto's skull was fractured, and that he found blood and brains on the rear footboard of the engine. From this evidence the jury was justified in finding that the death of Shatto resulted as a consequence of his intoxication. There is a conflict in the testimony, but there is ample evidence to sustain the verdict on this point.

The death of Shatto occurred on December 13, 1907. It is not disputed that the Board of Commissioners of the County of Marion at its January term, 1907, granted to Thomas Lawlor a retail liquor license to conduct a saloon for the period of one year at the southwest

corner of Martindale Avenue and Nineteenth Street, and that he filed a bond with his coappellants as sureties thereon; but appellants claim that the undisputed evidence shows that Lawlor was not conducting a saloon at that place on December 13, of that year, and that the place was being conducted at that time by Frank Glenn, to whom Lawlor had sold the stock and fixtures on July 17, 1907.

It is asserted by appellants that the burden rested on appellees to prove that the unlawful sale of liquor, which caused or contributed to the intoxication of Shatto, was made by the agent or servant of Thomas Lawlor, and that there is no evidence tending to prove such fact.   To make a *prima facie* case on this point, it is sufficient to show that a license was granted to him to conduct a saloon at the place where the liquor was sold, and that a saloon was opened and conducted at that place, and that the sale was made by a person in charge within the term covered by the license.   The evidence tended to prove these facts and justified the inference that the place was being conducted under the license granted to Lawlor, and that the person in charge was his agent or employe.

To rebut the *prima facie* case thus made, the appellants called Frank Glenn as a witness who testified that on July 17, 1907, he purchased the stock and fixtures of the saloon in question from Thomas Lawlor, for $650 in cash, and that he took charge at that time and continued thereafter so to conduct it as the sole proprietor, and that he was so conducting it on December 13, 1907.   He further testified that at the time Lawlor sold out to him a bill of sale was executed, which he identified and which was introduced in evidence.   This bill of sale bears date of July 17, 1907, and this witness testified that it was signed and delivered on that date, and that it had been in his possession ever since.   ·He also testified that when the sale was made, Lawlor took his license and left the place and had not been there since, and there was other evidence tending

to prove that Lawlor left the State. This evidence tended to rebut the *prima facie* case made by appellees, and to show that the sales in question were not made by Lawlor or by his agents or servants; but the testimony of Glenn was discredited by the testimony of T. J. Carter, who testified that he worked for William B. Burford, and that the form of the bill of sale was printed by that firm. He further testified that the form was not printed until August, 1908, as shown by letters at its head. The jury may have

4. believed that Glenn wilfully testified to a falsehood in reference to the date of the execution and delivery of the bill of sale. If the jury so believed, it had a right to disregard the entire testimony of this witness. *Lemmon* v. *Moore* (1884), 94 Ind. 40; *Mercer* v. *Wright* (1854), 3 Wis. *645; *Stoffer* v. *State* (1864), 15 Ohio St. 47, 86 Am. Dec. 470.

It was for the jury to say whether the evi-

3. dence introduced by the defendant was sufficient to rebut the *prima facie* case made by plaintiffs; it was

5. the exclusive judge of the credibility of the witnesses and of the weight to be given to the testimony. Under the evidence the jury may have found that the sale concerning which Glenn testified was a sham, and that no *bona fide* sale of the stock and fixtures had actually been made, and that the evidence of such sale had been manufactured as a defense to this action. This court will not set aside

6. a verdict for want of evidence on any point on which the evidence is conflicting. *Wolcott* v. *Hayes* (1909), 43 Ind. App. 578, 88 N. E. 111; *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723. The

7. owner of a saloon may lawfully sell the stock and fixtures and quit the business. *Pierce* v. *Pierce* (1897), 17 Ind. App. 107, 46 N. E. 480.

Prior to the act of 1911 (Acts 1911 p. 244), the

8. statutes of our State provided no means by which the holder of a license to conduct a saloon could transfer

that license to another. *Godfrey* v. *State* (1839), 5 Blackf. 151; *Pickens* v. *State* (1863), 20 Ind. 116.

If the holder of a retail liquor license removes from the State, he thereby forfeits such license, and no judicial proceeding is necessary to declare such forfeiture. Such 9. license affords no protection to a person who sells intoxicating liquors assuming to act as the agent of the owner of such license. *Krant* v. *State* (1874), 47 Ind. 519.

Appellants claim that as the evidence shows that Lawlor was a nonresident of the State, his license was void, and that both he and his bondsmen were for that reason 10. relieved from any liability growing out of the conduct of the business. While it is true that such license affords the agent of the nonresident holder no protection against a criminal prosecution, it cannot be said that the holder of such license or his bondsmen can escape liability for damages resulting from an unlawful sale made by the agent of such a nonresident license holder under color of such license. To permit such a defense would be to permit a party to reap a benefit from his own wrong. *State, ex rel.* v. *Golding* (1902), 28 Ind. App. 233, 62 N. E. 502.

If the jury found that no good-faith sale had been 3. made by Lawlor, and that on December 13, 1907, the saloon in question was being operated by him or his agents, the verdict in favor of appellees is correct. This question seems to have been fairly submitted to the jury by the instructions and there is evidence from which the jury may have decided the question either in favor of appellants or appellees.

If the jury found that the sale by Lawlor to Glenn was valid and made in good faith, and that Glenn at once took possession and control of the saloon, this would render 11. der void the license granted to Lawlor, or would, at least, suspend its operation. If Glenn undertook to operate the saloon without procuring a license, he would be

liable to arrest and prosecution for every sale made without such license. The question then arises, Can Lawlor, the original licensee, and his bondsmen be held liable on the bond for civil damages resulting from a sale of liquor made by Glenn after the transfer of the saloon and at a time when he was operating it without a license? On this question the court gave to the jury the following instruction: "(17) Upon a suit on the bond of a retail liquor dealer for damages caused by the unlawful sale of intoxicants by such dealer, the principal and sureties on such bond are estopped to set up as a defense to such action that the license upon which such bond is based is void. And in this action, if you find from the evidence that by reason of the acts of the defendants themselves, or of any one of them, by and with, the knowledge and consent of the other defendants expressed or implied, the license issued to defendant Lawlor, if any, became inoperative, or void, but the sales complained of in plaintiff's complaint, if any, were made by one Glenn under color of such void license, then I instruct you the defendants are estopped from setting up the invalidity of such license if any, as a defense in this action."

In giving this instruction the court, no doubt, relied on the authority of *State, ex rel.,* v. *Golding* (1902), 28 Ind. App. 233, 60 N. E. 502. In that case a saloon license had been granted to two persons as partners, and the partnership opened and conducted a saloon at the place described in the license and under its apparent authority. The firm and its bondsmen were sued for civil damages resulting from a sale of intoxicating liquors unlawfully made during the time said firm was so operating the saloon, and a defense was attempted on the ground that the license granted to the partnership was void for the reason that the statute requires that such licenses can be granted only to individuals and not to firms or corporations. The court held that by accepting the license and transacting business thereunder the firm had estopped itself and its bondsmen from denying its validity.

It is clear that at the time the unlawful sale was made the partnership was conducting the business under color of a license granted to such firm.

In this case, if Lawlor, while the holder of a saloon license, became a nonresident of the State, such license would *ipso facto* become void, and would afford no protection to his agent in conducting the business; but if Lawlor in his absence left Glenn as his agent to conduct the business under authority and for his benefit, we would have no hesitancy in saying that the business so conducted would be under color of the license granted to Lawlor, and that both he and his bondsmen would be estopped from asserting the invalidity of the license on account of the absence of Lawlor from the State. If the instruction under consideration is intended to apply to this phase of the evidence, it is defective. The instruction warrants the jury in concluding that Lawlor and his bondsmen were estopped from setting up the invalidity of the license, without finding as a fact that Glenn was acting as his agent at the time he made the sale, or that Lawlor or his bondsmen had any knowledge that the business was then being conducted under color of the license granted to Lawlor.

Whether or not a stranger to a liquor license may, under any circumstances, conduct a saloon under color of a license granted to another, is a question we are not now called on to decide. It is quite clear, we think, that where a holder of a saloon license sells his stock and fixtures to another who takes possession and operates the saloon on his own account at the place described in the license of the seller, that such acts alone do not amount to conducting the business under color of the license of the seller, so as to render the seller liable on his bond for damages resulting from illegal sales made by the purchaser.

Under the evidence in this case, if Glenn made the illegal sale under color of Lawlor's license, it is quite clear that he must, at the time, have been acting either as the agent of Lawlor or the owner or proprietor

of the saloon. We have seen that the instruction is erroneous when applied to him as the agent of Lawlor. If we treat Glenn as the owner and proprietor of the saloon, it is quite clear, we think, that the sale in question cannot be said to have been made under color of Lawlor's license in the absence of a finding by the jury that Lawlor had attempted to assign his license to Glenn, or that he had knowingly permitted Glenn to hold himself out as his agent, or that he had in some other way aided or assisted Glenn in giving to the place the appearance of a saloon conducted under his license. If we apply this instruction to Glenn as the proprietor of the saloon, it is erroneous, for the reason that it probably led the jury to believe that a recovery on the bond was authorized upon a mere showing that the saloon was being conducted by Glenn under color of license at the time the sale complained of was made, and without any requirement that the jury should find that Lawlor or his bondsmen knew of such fact or were connected in any manner therewith.

The instructions given did not fully and fairly state the law governing the facts of this case. Instruction No. 10, requested by appellants, properly states the law and 13. should have been given. The instruction is as follows: "A person holding a retail liquor license and who operates a saloon thereunder may sell out his stock of goods and fixtures and quit such business at any time, and the fact of the existence of such former license could not of itself prohibit some other person from carrying on a saloon business in the place for which such license had existed, and the fact that such new saloon business might be carried on unlawfully would not render the former holder of the former license liable therefor, provided he did not have any connection therewith." Appellants requested a number of instructions which stated the same proposition in various forms, but the court refused to give any instruction which

embodied the proposition stated in the instruction quoted. This was error.

The record does not show affirmatively that the jury found that the sale of the stock and fixtures was not made in good faith. If it did, we might hold instruction No. 17 harmless. Under the evidence the jury may have found that such sale was *bona fide,* and it may have rested its verdict on the ground that the purchaser of the stock and fixtures made the sale of liquor charged in the complaint under color of the license. We cannot, therefore, say that the instruction was harmless, or that it did not influence the verdict.

Some other questions raised by the instructions are presented. To consider the objection to each of the instructions separately would unduly extend this opinion. Sufficient has been said to enable the lower court to avoid error on another trial of this case.

The judgment is reversed, with directions to grant a new trial.

Judgment reversed.

NOTE.—Reported in 99 N. E. 487. See, also, under (1) 23 Cyc. 326; (2, 3) 23 Cyc. 325; (4) 40 Cyc. 2586; (5) 38 Cyc. 1518; (6) 3 Cyc. 348; (7) 23 Cyc. 334; (8) 23 Cyc. 154; (9) 23 Cyc. 114; (10) 23 Cyc. 145; (11) 23 Cyc. 331; (12) 23 Cyc. 114; (13) 38 Cyc. 1718. As to statutory right of action against liquor seller had by relative of person sold to, see 48 Am. Dec. 625. For a discussion of furnishing liquor as the proximate cause of injury under civil damage acts, see 3 Ann. Cas. 59; 13 Ann. Cas. 200.